## Gossett Unemployment Compensation Case.
## Atlantic Freight Lines, Inc., Appellant, v. Unemployment Compensation Board of Review.

190

Argued November 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, ERVIN, and WATKINS, JJ. (WRIGHT and WOODSIDE, JJ., absent).

*Ira B. Coldren, Jr.,* with him *Herman M. Buck,* and *Ray, Coldren & Buck,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY RHODES, P. J., December 9, 1958:

This is an appeal by Atlantic Freight Lines, Inc., from the decision of the Unemployment Compensation Board of Review granting benefits to one of its former employes, Edgar L. Gossett. Atlantic contends that claimant was disqualified under section 402 (e) of the Law, 43 PS §802 (e), which provides: "An employe

shall be ineligible for compensation for any week— . . .
(e) In which his unemployment is due to his discharge
or temporary suspension from work for willful miscon-
duct connected with his work, irrespective of whether
or not such work is 'employment' as defined in this
act; . . ."

The findings of the board, which are supported by
the evidence, are briefly as follows. The claimant was
last employed by Atlantic for a period of approximately
eleven months, his last day of work being September
21, 1957. On August 26, 1957, claimant was involved
in an accident at Lorain, Ohio, and he was instructed
by his employer to have his eyeglasses adjusted. On
September 19, 1957, the claimant was again involved
in an accident. The second accident occurred in Jean-
nette, Pennsylvania, when claimant drove out of a side
street and attempted to make a left turn; another ve-
hicle, approaching at a high speed, "hooked" the front
bumper on claimant's truck. Following the second
accident claimant proceeded to his initial destination
in Jeannette, where his truck was loaded with its as-
signed shipment. After the truck was loaded claimant
telephoned the home office of Atlantic, in Uniontown,
and was ordered to proceed to make his delivery.
Claimant made the delivery in Ohio and picked up a
return load. This work required about three days. On
the Monday following claimant's return, he was called
by his employer and instructed to proceed to the home
office to prepare an accident report, which instructions
he followed. The employer then notified claimant that
he was discharged because of the accidents and to pro-
tect the employer's insurance fund.

The bureau, the referee, and the board concluded
that claimant was eligible for benefits.

Atlantic contends that the claimant was discharged
for willful misconduct in disregarding its instructions

to have his glasses checked following the first accident and in failing to report the second accident for five days thereafter, allegedly contrary to the rules and regulations of Atlantic.

Willful misconduct within the meaning of the Law has been described as—" '. . . an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has the right to expect of his employee,* or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' " *Det-terer Unemployment Compensation Case,* 168 Pa. Superior Ct. 291, 294, 77 A. 2d 886, 888. Willful misconduct includes not only intentional acts of wrongdoing, but may include a "conscious indifference to the perpetration of a wrong, or a reckless disregard of the employe's duty to his employer . . ." *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 401, 116 A. 2d 271.

After the first accident claimant was suspended from his employment for a period of five days and was put back to work on the condition that he have his eyes examined for glasses. Atlantic apparently did nothing further to assure that claimant had obtained the suggested eye examination. Claimant had previously had his eyes examined and obtained new glasses about a year prior to the accidents. He explained that he was unable to have his eyes checked following the first accident because of a lack of funds. It appears that subsequent to the accident and because of legal proceedings arising therefrom, Atlantic deducted from claimant's pay $50 for an attorney's fee and $100 for a bond. Claimant had only $50 remaining with which

to support himself and pay traveling expenses on the job for the next two weeks. Claimant stated that it was impossible to live on that amount and to have his eyes checked in addition. Moreover, it appears that the first accident was not necessarily attributable to claimant's alleged defect in vision. The record indicates that prior to the accident claimant had been on the road for approximately eighteen hours when he arrived at Cleveland, Ohio. Although he requested that he be allowed to rest before proceeding to Port Clinton, Ohio, he was told by the dispatcher of Atlantic that he had time to make the next stop before it closed and that he was to continue on his journey. Claimant became sleepy at the wheel and the accident ensued.

It is apparent that the first accident was not caused merely by claimant's alleged defective vision. In fact, the request that claimant obtain an eye examination was made monetarily impossible of immediate compliance by the action of Atlantic, and amounted to an attempt to focus sole responsibility for the accident upon claimant, notwithstanding Atlantic's demand that he work excessive hours.

Claimant became involved in the second accident approximately three weeks after the first accident. After the second accident claimant attempted to notify Atlantic but was unable to reach a telephone immediately. He proceeded to his initial stop and telephoned Atlantic's office. He was told by the dispatcher to continue into Ohio, make the delivery, and fill out the required accident reports when he returned. It does not appear to us that the board could conclude otherwise than that claimant had followed the instructions of his superior in delaying preparation of the accident report forms until his return from the trip on the business of his employer. Claimant followed instructions in telephoning his employer and the insurance company as soon as he found a telephone available.

Under the circumstances it was not error for the board to conclude that, although the employer may have been justified in protecting its insurance status against a purported "accident prone" employe, the actions of claimant did not necessarily involve willful misconduct within the meaning of the Law. It appears clear that the true reason for the discharge of claimant was, as found by the board, that he was involved in two accidents, and not that he had disregarded instructions or rules and regulations of his employer. We note that the employer does not contend on this appeal that these accidents are part of a series attributable to negligence, occurring periodically and with consistent regularity, which produced substantial financial loss to the employer, thus amounting to willful misconduct within the concept of *Allen Unemployment Compensation Case*, 168 Pa. Superior Ct. 295, 298, 77 A. 2d 889. This is not such a case.

The decision of the board is affirmed.