Quinn Unemployment Compensation Case.

Argued April 16, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Everett E. Utterback,* with him *Utterback and Brown,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY ERVIN, J., June 12, 1963:

In this unemployment compensation case the bureau, the referee and the board all found that the claimant was not entitled to benefits because of willful misconduct in violation of the provisions of §402(e) of the Unemployment Compensation Law, 43 PS §802(e), when he was discharged from his position as a taxicab driver because he was involved in two accidents within a period of three years and four months of employment.

There is no dispute as to the facts, which are as follows: The claimant was employed as a taxicab driver

on March 9, 1959 and was discharged on July 7, 1962. On February 12, 1962 he skidded across the divider on the Parkway in Pittsburgh and struck another car. The road at that time was covered with snow. Both drivers were injured. It cost $1,598.00 to repair the taxicab. On July 7, 1962 the claimant skidded through a stop sign and struck another car. The fender of the cab was damaged, the light knocked out and the left front fender of the other vehicle was damaged. There were no personal injuries as a result of this accident. The streets were wet because they had just been sprinkled. The evidence produced showed only the two above-mentioned accidents chargeable to the claimant's negligence in a period of three years and four months as an operator of a taxicab in and about the City of Pittsburgh.

In *Allen Unemployment Compensation Case,* 168 Pa. Superior Ct. 295, 77 A. 2d 889, we affirmed the decision of the board where a taxi driver, during a 21-month-period, was involved in eight traffic accidents (the employer superintendent having testified that the driver had 13 accidents) which occurred in the last six months of his employment. Most were minor in degree but the employer incurred $555.00 in expenses on their account. The last was the most serious and involved further expense; a collision with another automobile at a street intersection compelled the employer to pay its passenger $75.00 damages for personal injuries and the claim of the driver of the other automobile remained unsettled at the time of the hearing before the compensation authorities. In that case there was also a collective bargaining agreement between the employer and the claimant's labor union which provided "The Company shall have the right to suspend or discharge any driver for just cause and/or for any of the following offenses: . . . 5. Accidents involving serious personal injuries or substantial property damage caused

by the negligence of driver, or high frequency of chargeable minor accidents." In that case we announced the following principle of law: "Of course, a single dereliction or minor and casual acts of negligence or carelessness do not constitute willful misconduct. But a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer, will support the conclusion that the employe has recklessly or carelessly disregarded his duties, or has been indifferent to the requirements of his occupation, and is therefore guilty of willful misconduct."

In *Shirley Unemployment Compensation Case,* 198 Pa. Superior Ct. 296, 181 A. 2d 709, we affirmed the decision of the board in which the record showed that the claimant had a history of accidents held to be chargeable to him, for which he was discharged in December, 1959. He was, however, rehired in April 1960. After that time he had been involved in six accidents, three of which were chargeable to his negligence. He was placed under surveillance by the company and found violating various company rules concerning driving, and was warned of the violations by his employer. These violations included going through a red light, starting on amber and improper parking. On May 21, 1961 he was again involved in an accident, as a result of which he was unable to work until July 6, 1961, and other persons involved in the accident were seriously injured. He was discharged on July 6, 1961 because of the prior warnings and his history of chargeable accidents.

In *Gossett Unemployment Compensation Case,* 188 Pa. Superior Ct. 189, 146 A. 2d 333, we affirmed the decision of the board in which the claimant was found to be eligible for compensation. In that case the claimant was employed for a period of approximately 11 months, his last day of work being September 21, 1957.

On August 26, 1957 claimant was involved in an accident at Lorain, Ohio, and he was instructed by his employer to have his eyeglasses adjusted. On September 19, 1957, claimant was again involved in an accident. The second accident occurred in Jeannette, Pennsylvania, when claimant drove out of a side street and attempted to make a left turn; another vehicle, approaching at a high speed, "hooked" the front bumper on defendant's truck. The claimant was discharged because of the accidents and to protect the employer's insurance fund. The employer contended that the claimant was discharged for willful misconduct in disregarding its instructions to have his glasses checked following the first accident and in failing to report the second accident for five days thereafter, allegedly contrary to the rules and regulations of the employer. In an opinion written by President Judge Rhodes for our Court, it was said, at page 194: "It appears clear that the true reason for the discharge of claimant was, as found by the board, that he was involved in two accidents, and not that he had disregarded instructions or rules and regulations of his employer. We note that the employer does not contend on this appeal that these accidents are part of a series attributable to negligence, occurring periodically and with consistent regularity, which produced substantial financial loss to the employer, thus amounting to willful misconduct within the concept of Allen Unemployment Compensation Case, 168 Pa. Superior Ct. 295, 298, 77 A. 2d 889. This is not such a case."

It is, of course, true that the credibility of the witnesses, the weight of their testimony and the reasonable inferences to be drawn from it are for the board: *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271. It is also true that the findings of the board as to facts, if supported by the evidence, are conclusive: *Progress Mfg. Co., Inc. v.*

*Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A. 2d 632.

In the present case there was no real dispute as to the facts. The conclusion of the board drawn from those facts, to wit: that the claimant was guilty of willful misconduct, was, in our opinion, primarily a legal conclusion and one which we are in just as good a position to draw as the board. The drawing of this conclusion was an endeavor by the board to put into effect the legal principle announced by us in the *Allen* case, hereinbefore more fully stated. We do not believe that the conclusion reached by the board is justified by the facts in this case. Two skidding accidents in a period of three years and four months by a taxicab driver in a big city cannot be called a "series of accidents occurring periodically and with consistent regularity". While they might have resulted from negligence, it is an easy thing for a driver to skid upon a snowy or wet highway. Many careful drivers have often done so. We do not believe that the record in this case is sufficient to justify a finding that the driver was guilty of willful misconduct.

It may well be that the employer would have been justified in protecting its insurance status but we do not believe that, under the facts of this case, the claimant should be disqualified from receiving unemployment compensation benefits.

The decision of the board is reversed.

WOODSIDE, J., dissents.