Rone Unemployment Compensation Case.
Hambridge Steel Erectors, Inc., Appellant,
*v.* Unemployment Compensation
Board of Review.

426

Argued September 14, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*David N. Rosen,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *William C. Sennett,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WRIGHT, J., November 16, 1967:

Richard T. Rone was last employed as a truck driver, mechanic's helper, and utility man by Hambridge Steel Erectors, Inc., 6811 Greenway Avenue in the City of Philadelphia. His final day of work was April 7, 1966, on which date he terminated his employment. The Bureau of Employment Security determined that Rone had voluntarily left work without cause of a necessitous and compelling nature, wherefore he was disqualified under Section 402(b)(1) of

the Unemployment Compensation Law.[1] The Referee reversed the Bureau's determination and allowed benefits. The Unemployment Compensation Board of Review affirmed the decision of the Referee. The employer has appealed.

Rone commenced work on May 18, 1964, at a straight salary of $80.00 per week. The reason he assigned for terminating his employment was as follows: "I quit this job because they did not pay me for overtime". According to G. L. Hambridge: "It was understood that there would be no overtime . . . When we were busy he did work long hours, but by the same token when things slowed up he left earlier". Rone himself made the following statement: "I figured there would be no overtime if you were on salary". When asked whether there was ever any understanding that he would be paid overtime, Rone replied: "A. No, they never got around to it . . . Q. What did you do on April 7th. A. I quit. I could not go along any longer with it". The record discloses that, due to Rone's complaint about his working hours, he was given two raises, first to $100.00 per week and later to $108.00 per week, "as before with the no overtime understanding". The employer's position is summarized in the statement of its superintendent, William Peck, that "when you are salaried you do not get overtime. When there is work you work; when there is not work you have it easier".

The Board of Review concluded that Rone had met the burden of showing a necessitous and compelling reason for leaving his employment because the employer "failed to establish an equitable plan for overtime work". We are not in accord with this conclusion. To permit it to stand would mean that any salaried employe could request higher pay and, if his

---

[1] Act of December 5, 1936, P. L. (1937) 2897, Section 402(b)(1), 43 P.S. 804(b)(1).

request was denied, terminate his employment and receive unemployment compensation, a result certainly not intended by the legislature.

There can be no quarrel with the argument of able counsel for the appellee that the Board's findings of fact, if supported by evidence, are conclusive on appeal.. Cf. *Progress Mfg. Co. v. U. C. Bd. of Rev.*, 406 Pa. 163, 176 A. 2d 632. However, the legal conclusion drawn by the Board from its findings is subject to our review: *Quinn U. C. Case*, 201 Pa. Superior Ct. 152, 191 A. 2d 714. Whether a claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature is a question of law: *Martinez U. C. Case*, 186 Pa. Superior Ct. 50, 140 A. 2d 351. It has been held in a long line of decisions by this court that a claimant who voluntarily quits work because of dissatisfaction with his rate of pay is ineligible to receive benefits.[2] As stated in *Disario U. C. Case*, 193 Pa. Superior Ct. 517, 165 A. 2d 111: "While he had the right to terminate his employment and seek to better his wages if he could elsewhere, his dissatisfaction with wages did not compel him to quit so as to be eligible for unemployment compensation benefits".

Decision reversed.

---

DISSENTING OPINION BY HOFFMAN, J.:

In my opinion the majority has clouded the issue in this case by framing it in terms of a request for in-

---

[2] See, inter alia, *McGuire v. U. C. Bd. of Rev.*, 169 Pa. Superior Ct. 467, 82 A. 2d 324; *Horning U. C. Case*, 177 Pa. Superior Ct. 618, 112 A. 2d 405; *Bee U. C. Case*, 180 Pa. Superior Ct. 231, 119 A. 2d 558; *Ganzen U. C. Case*, 182 Pa. Superior Ct. 149, 126 A. 2d 529; *Cupo U. C. Case*, 187 Pa. Superior Ct. 285, 144 A. 2d 620; *Barittisky U. C. Case*, 189 Pa. Superior Ct. 473, 151 A. 2d 874; *Disario U. C. Case*, 193 Pa. Superior Ct. 517, 165 A. 2d 111; *Patelmo U. C. Case*, 195 Pa. Superior Ct. 57, 169 A. 2d 794; *DeLuca U. C. Case*, 198 Pa. Superior Ct. 120, 182 A. 2d 279; *Kuzio U. C. Case*, 199 Pa. Superior Ct. 630, 186 A. 2d 426.

creased wages. The real issue in this case is whether an employer may require that his employee work overtime without paying him for this additional work.

The majority, while recognizing the rule that the Board's findings of fact, if supported by evidence, are conclusive on appeal, *Progress Manufacturing Company, Inc. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 176 A. 2d 632 (1962), nonetheless, chooses to ignore these findings.

The Board specifically found that "claimant was originally hired on a straight salary of $80.00 per week *and the hours of work were established as 7:00 a.m. to 5:00 p.m.*" (Emphasis added)

"4. From time to time, due to the nature of the employer's business, the claimant was required to work overtime, and the claimant on numerous occasions discussed the overtime work with his employer with the point in view of establishing some plan by which he would be paid for the overtime work that he would be required to perform.

"5. When the employer failed to establish any method or basis for paying the claimant for overtime work, he gave notice to his employer and voluntarily terminated his employment because of this fact.

. . .

"In the instant case, the claimant, who was a salaried employee, was from time to time required to work additional hours of overtime for which he was not compensated. . . ."

The majority refers to testimony by the employer that there was to be no overtime pay. The Board, however, did not believe this testimony and did not find that there was such an understanding.

The Board did believe the testimony of Rone who stated that he often worked until 9:30 at night but, "I never received any pay for those hours. I often asked about it. . . . A lot of days I worked two half days on

Saturdays and did not get paid for it." (Record 23a-24a). I cannot agree that a man who takes a salaried position based on a ten hour work day and is then required to work five additional hours a day without additional pay, is compelled to work under these conditions and cannot voluntarily terminate his employment. The majority's reference to *Disario Unemployment Compensation Case,* 193 Pa. Superior Ct. 517, 165 A. 2d 111 (1960), in this regard is totally inapplicable. In *Disario,* the claimant was merely seeking higher wages. In the instant case, however, claimant has been denied any compensation for extra work which he never expected and which was never part of the original employment agreement. Under such circumstances, I would affirm the finding of the Board that Rone's voluntary termination of his employment must be deemed to have been for cause of a necessitous and compelling nature.