378 A.2d 829

**Martin TAYLOR, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW of the Commonwealth of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1977.

Decided Oct. 7, 1977.

352

Harold I. Goodman, Mark B. Segal, Community Legal Services, Philadelphia, for appellant.

Sydney Reuben, Asst. Atty. Gen., Charles G. Hasson, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

OPINION

MANDERINO, Justice.

Appellant, Martin Taylor, was denied unemployment compensation benefits by the Bureau of Employment Security and appealed. Following a hearing at which he was represented by counsel, and at which witnesses appeared and testified in his behalf, the referee affirmed the Bureau's determination of ineligibility on the ground that appellant's termination of employment was voluntary and not for necessitous and compelling reasons as required for eligibility by Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess. P.L. (1937), as amended, 43 P.S. § 802(b)(1).

Section 402 provides in part that,

"An employe shall be ineligible for compensation for any week—

. . . . .

(b)(1) in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ."

In deciding against appellant, the referee concluded that certain incidents of racially derogatory language and slurs, which remarks appellant and his witnesses had testified had been directed at appellant by his employer, his co-workers, and by patrons of his employer's restaurant, did not give

appellant necessitous and compelling reasons for terminating his employment.

The Unemployment Compensation Board of Review (Board) adopted the referee's factual findings and affirmed the denial of compensation.

On Appeal, the Commonwealth Court affirmed the Board's decision. *Taylor v. Unemployment Compensation Bd. of Review*, 19 Pa.Cmwlth. 391, 338 A.2d 702 (1975). We granted appellant's petition for allowance of appeal, and this appeal followed.

 It is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board, or by the referee as the case may be, are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Progress Manufacturing Co. Inc. v. Compensation Bd. of Review*, 406 Pa. 163, 176 A.2d 632 (1962); *Ristis Unemployment Compensation Case*, 178 Pa.Super. 400, 116 A.2d 271 (1955); *Stillman v. Unemployment Compensation Bd. of Review*, 161 Pa.Super. 569, 56 A.2d 380 (1948). The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists. Furthermore, a claimant who alleges that he or she terminated employment for necessitous and compelling reasons, has the burden of establishing the existence of such reasons. *See e. g., Owen v. Unemployment Compensation Bd. of Review*, 26 Pa.Cmwlth. 278, 363 A.2d 852 (1976); *Unemployment Compensation Bd. of Review v. Cooper*, 25 Pa.Cmwlth. 256, 360 A.2d 293 (1976).

The record here shows that petitioner had been employed as a chef at Victor's Restaurant, Philadelphia, Pennsylvania, for three years. He was the only black employee at the establishment. Appellant testified that he had been subjected to numerous instances of racial discrimination, racial insults, and racial slurs by his employer, his co-workers, and

restaurant patrons. He claimed that the atmosphere of racial tension engendered by these events caused him to suffer physically and mentally while on the job and that when the situation became unbearable, he terminated his employment.

Among other things, the referee found as fact that racially derogatory remarks had been directed at appellant, though more often by customers than by appellant's employer or co-workers. The referee and the Board concluded that petitioner's proofs as to these incidents of racially derogatory remarks did not establish necessitous and compelling reason for the voluntary termination of employment.

The Commonwealth Court divided four to three over the case. The majority in the Commonwealth Court agreed with the Board that appellant had failed to establish that his employer had discriminated against him in job advancement because of his race, and that appellant had failed to provide sufficient proof to show that the conditions of his employment had adversely affected his health. As conceded by the majority, one issue remained, however: whether " . . . as an independent ground, the racial slurs directed at claimant in his place of employment were sufficient to warrant his voluntary termination." Stated otherwise, did the racial slurs give appellant necessitous and compelling reasons for voluntarily terminating his employment at Victor's Restaurant?

The majority in the Commonwealth Court concluded that this question was not a reviewable question of law. The Court reasoned that,

" . . . [a]lthough the Board in its findings and discussion of the case agreed that numerous incidents evidencing a racial animus toward claimant had, in fact, occurred in his place of employment, it found that they were not of such a nature and frequency as to warrant claimant's voluntary termination. Necessarily, this determination was based upon a critical evaluation of the credibility and demeanor of the respective witnesses and the weight to be given the acknowledged incidents of racial prejudice.

There can be no question but that from the cold printed record before us we would have reached a different decision. But that is not our function. We cannot find that the Board abused its fact-finding discretion or otherwise capriciously disregarded competent evidence in holding that claimant had not met his burden of proving that his voluntary termination was the product of an atmosphere of racial tension existing at his place of employment."

The dissenters in the Commonwealth Court felt that the question was one of law and concluded that the court had a duty to decide whether or not the incidents testified to by appellant and two of his co-workers constituted "a good cause" as required by the statute and case law. The dissenters then decided that these incidents amounted to necessitous and compelling reasons for appellant's voluntary termination. We agree with the dissenters in the Commonwealth Court. We therefore reverse the decision affirming the Board's denial of unemployment compensation.

The legislature has defined the scope of review of unemployment compensation decisions in both the Unemployment Compensation Law itself, and in the Administrative Agency Law. The Unemployment Compensation Act, Act of Dec. 5, 1936, Second Ex.Sess. P.L. (1937) 2897, art. V, § 510; *as amended* 43 P.S. § 830 states that,

"[i]n any appeal to the Superior Court the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in such cases the jurisdiction of the Court shall be confined to questions of law . . . ."

Section 508(e) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223 (17 P.S. § 211.508(e)) specifies that the jurisdiction of the Superior Court provided by § 510 above is transferred to the Commonwealth Court, and that § 510 was "repealed insofar as inconsistent with such transfer." The delineation of the scope of review contained in § 510 is, of course, not inconsistent with the transfer of jurisdiction to the Commonwealth Court.

The Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 44 (71 P.S. § 1710.44) provides, in part:

" . . . [a]fter hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. . . . "

As previously stated, if supported by substantial evidence in the record as a whole, the Board's findings of fact are conclusive upon appeal. The legal conclusions drawn by the Board from its findings of fact, however, remain subject to judicial review. *See Hambridge Steel Erectors, Inc. v. Unemployment Compensation Board of Review*, 211 Pa.Super. 425, 428, 235 A.2d 432, 433 (1967).

■ Whether one had "cause of a necessitous and compelling nature" is an ultimate conclusion which must be drawn from the underlying findings of fact. Such ultimate conclusions—sometimes called "ultimate facts"—are legal conclusions and are always subject to appellate review. *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273 (1976); *In re Estate of Thomas*, 463 Pa. 284, 344 A.2d 834 (1975); *In re Estate of McKinley*, 461 Pa. 731, 337 A.2d 851 (1975); *Van Products Co. v. Gen. Weld. & Fab. Co.*, 419 Pa. 248, 213 A.2d 769 (1965).

■ The meaning of the statutory requirement of necessitous and compelling cause has been developed by case law over the years. Although the precise language used to describe the condition of necessitous and compelling circumstances has varied from case to case, *see e. g. Keisling v. Unemployment Compensation Bd. of Review*, 198 Pa.Super. 345, 181 A.2d 717 (1962); *Cook v. Unemployment Compensation Bd. of Review*, 194 Pa.Super. 652, 169 A.2d 594 (1961); *Thibodeau v. Unemployment Compensation Bd. of Review*, 178 Pa.Super. 10, 112 A.2d 427 (1955), it can be said that "good cause" for voluntarily leaving one's employment (i. e.

that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

■ As stated by the Commonwealth Court in *Rettan v. Unemployment Bd. of Compensation*, 15 Pa.Cmwlth. 287, 291–292, 325 A.2d 646, 648 (1974), quoting from *Sturdevant Unemployment Compensation Case*, 158 Pa.Super. 548, 556–557, 45 A.2d 898, 903 (1946):

" 'Voluntarily' and 'involuntarily' are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in 'voluntarily', but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties—these are circumstances that exert pressure upon him and imperiously call for decision and action.

"When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into

involuntary unemployment." (Emphasis in original. Footnote omitted.)

Appellant testified to the following incidents of racially derogatory remarks made either by his employers, his co-workers, or the patrons of his employers' restaurant. Appellant stated,

(a) that he was told by his employers that they would not sell their house to Blacks;

(b) that he was told by his employers " . . . no wonder no one wants to come into center city . . . there is nothing but niggers in town" ;

(c) that he was told by his employers that Blacks were getting too many rights;

(d) that he was told by his employers' son, a co-worker, that he had "advanced as far as he could when he walked through the door;"

(e) that he was called "a stupid nigger" by another of the employers' sons, also, a co-worker;

(f) that he was told by his employer that it would be embarrassing for him if his customers found out that he had a black chef;

(g) that he was given his paycheck in the basement of the restaurant so that the white customers in the dining room would not see that a black man was employed there;

(h) that he was ordered by his employer to sit at a table with two white customers, for whom he had prepared a meal after the regular closing hours, and that upon sitting down at the table, he was insulted by the white patrons;

(i) that he was aware that his employer had told one of the few white co-workers who was not openly hostile to him because of his race that she should "worry about her own kind";

(j) that when a black would patronize the restaurant, his employers and white co-workers would tell him that "his paisons" were there;

(k) that he was the only employee who was not permitted to have his photograph taken when a local white celebrity visited the restaurant, and that he was told that

this was because he "didn't have enough bleach" to have his picture taken with a white man;

(*l*) that he was called a "black S.O.B." by his employers.

Appellant's witnesses also testified as to several of these incidents. Appellant stated that these and similar incidents caused him to exist in a continuing state of anxiety while on the job, and that he terminated his employment when the tension, created by the racist atmosphere at his place of employment, became intolerable. The Board accepted appellant's version of the incidents described above, but concluded that they were not sufficiently serious to establish that appellant had cause of a necessitous and compelling nature for voluntarily terminating his employment.

As was aptly stated in *Sturdevant Unemployment Compensation Case*, 158 Pa.Super. 548, 557, 45 A.2d 898, 903 (1946), however,

" . . . [t]he pressure of necessity, of legal duty, or family obligations, *or other overpowering circumstances* and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment." (Emphasis added.)

This statement was expressly approved in *Pittsburgh Pipe and Coupling Co. v. Unemployment Compensation Bd. of Review*, 401 Pa. 501, 165 A.2d 374 (1960).

■ Applying a standard of common sense to circumstances which unemployment compensation claimants have alleged to have been overpowering and therefore cause of a necessitous and compelling nature, has led the courts of this Commonwealth to allow compensation in cases in which the employee was subjected to verbal abuse and profanity at his or her place of employment. *See e. g. Thibodeau v. Unemployment Compensation Bd. of Review*, 178 Pa.Super. 10, 112 A.2d 427 (1957), *Electrical Reactance Corp. v. Unemployment Comp. Bd. of Review*, 169 Pa.Super. 269, 82 A.2d 277 (1951). Similarly, quitting one's employment because of racial discrimination is cause of a necessitous and compelling nature. *James v. Unemployment Compensation Bd. of Review*, 6 Pa.Cmwlth. 489, 296 A.2d 288 (1972); *see also*

*Woodson v. Unemployment Comp. Bd. of Review,* 461 Pa. 439, 336 A.2d 867 (1975).

■ Applying these principles to the instant case, we are convinced that appellant has sustained his burden of showing that his termination of employment was with cause of a necessitous and compelling nature by demonstrating that his conduct was consistent with ordinary common sense and prudence, and that the circumstances prompting the severance of the employment were substantial. Appellant and his witnesses testified to several instances in which he was subjected to verbal abuse because of his race. Such verbal abuse was a continuing occurrence throughout appellant's three year employment at Victor's Restaurant. The continuing racial tension created by such abuse caused appellant repeated humiliation and apprehension. These reactions were not mere whims, nor were they caused by any overly sensitive emotional condition on appellant's part. The humiliation and apprehension were emotions grounded in reality and were substantial burdens placed upon appellant's ability to perform his job. The degrading and abusive effects of the repeated expressions of racial prejudice were cumulative in nature and ultimately created an employment condition which would have been intolerable to any reasonable person in similar circumstances. The record establishes that appellant left his job after suffering through three years of such repeated incidents of racial prejudice and verbal abuse. These incidents provided appellant with " . . . real, not imaginary, substantial, not trifling . . . " reasons which "compelled" his termination of employment. *Sturdevant Unemployment Compensation Case, supra,* 158 Pa.Super. at 557, 45 A.2d at 903. The termination was with cause of a necessitous and compelling nature and appellant should not have been denied compensation.

The decision of the Commonwealth Court affirming the Board's denial of unemployment compensation is reversed, and the matter is remanded to the Board with direction that appellant's claim be allowed.

POMEROY, J., did not participate in the consideration or decision of this case.

JONES, former C. J., did not participate in the decision of this case.