Dell Watts, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 14, 1979, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Michelle R. Terry,* with her *Nathaniel C. Nichols,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, February 8, 1980:

Dell Watts, Jr. (claimant) appeals from an order of the Unemployment Compensation Board of Review which disallowed further appeal of a referee's decision denying him benefits under Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1) because he had voluntarily terminated his employment without cause of a necessitous and compelling nature. He argues that the ref-

eree capriciously disregarded evidence of racial discrimination against him on the part of his employer, the Bryn Mawr Hospital (Hospital).

The claimant, a licensed practical nurse, worked for the Hospital from May 23, 1977, until August 12, 1977. In his resignation letter, which he submitted on July 28, 1977 after a conference with his supervisor, he cited "situational reactions, misunderstandings . . . and progress not forthcoming" as his reasons for terminating his employment. He did not mention racial discrimination. At the hearing before the referee, however, he testified to his belief that his supervisor had singled him out for unfair treatment, that fellow employees had unnecessarily reported his mistakes, and that he understood that he was probably going to be fired (although he admitted he was never told he would be).[1]

The claimant also testified as to several incidents in which he believed he had been subjected to racial discrimination. He said that he had been dismissed as a student from the Bryn Mawr School of Nursing and had consequently filed a complaint with the Pennsylvania Human Relations Commission. The matter was never resolved, and the circumstances surrounding the dismissal were not clearly developed at the hearing, but he later completed his schooling in the army. He also said that another nurse at the Hospital had asked him, apparently in front of the head nurse, to help her with a patient under the claimant's care, with the al-

---

[1] The claimant did assert in his testimony that the director of personnel suggested that he look for other work and stated, "[W]e don't want you and you keep coming back. Why do you keep coming back[?]" We note, however, that not only is the context and significance of this statement unclear but that questions of credibility and evidentiary weight are for the fact-finder, who may reject even uncontradicted testimony. *Caterina v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 19, 401 A.2d 852 (1979).

leged intent of exposing his neglect. He added that, at another time, a fellow nurse had reported a very minor error to the head nurse which related to a medical test, and that still another nurse had let a patient out of bed against the doctor's orders but "nothing happened to her." Additionally, he said that other nurses had let patients fall, while he never had, and that, while he was not permitted to administer medication, a nurse who was new on the floor was allowed to do so. He claimed that he had been unjustly questioned about the erroneous administration of an intravenous bottle which he had not administered, whereas errors were made by other nurses who were apparently never disciplined for such errors in any way. He presented testimony by the president of the local chapter of the National Association for the Advancement of Colored People, but his testimony was inconclusive. While he indicated that he believed the claimant had been treated unfairly, he also stated that the employer was very cooperative with his organization and that they' had a good relationship. He did testify as to the claimant's earlier dismissal from the Bryn Mawr School of Nursing, but indicated that it was based on academic considerations. He gave no specific testimony as to the circumstances surrounding the claimant's resignation from his work at the Hospital.

There is no question that racial discrimination may be a cause of necessitous and compelling nature for terminating one's employment. *See Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 348 A.2d 829 (1977). The burden of proving necessitous and compelling circumstances, however, is on the claimant, *Cafolla v. Unemployment Compensation Board of Review,* 26 Pa. Commonwealth Ct. 199, 362 A.2d 1148 (1976), and, inasmuch as he did not prevail below, our review here is confined to whether or not there has been a capricious disregard of competent

evidence, *Houff Transfer, Inc. v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979).

Our examination of the record here indicates that, unlike the situation in *Taylor, supra,* there is no evidence of any overt racial references or of any racially motivated acts on the part of the employer or fellow employees. In fact, the incidents which the claimant has related really do not establish that he was unjustifiably singled out for, or that there was any racial animus behind, the allegedly differential treatment he claims to have received. The evidence at best suggests some petty differences and, perhaps, some administrative inconsistency, but certainly not a pattern of racial discrimination.

The evidence as to the claimant's dismissal from the nursing school, for example, is of questionable probative value. Not only is the connection between the nursing school and the employer unclear, but the discrimination complaint filed with the Human Relations Commission against the *school* was never resolved, and other testimony indicated that the dismissal was based on academic considerations. As to the two instances in which other nurses brought errors on the part of the claimant to the attention of the head nurse, these actions may have been vindictive, but they are not necessarily suggestive of racial discrimination. Similarly, the testimony that the claimant was not permitted to administer medication but that a new nurse was and that the claimant was unjustifiably questioned about the administration of the intravenous bottle does not compel a conclusion that he was discriminated against. Finally, the fact that other nurses were not disciplined for their shortcomings is at best of questionable relevancy because there is no evidence that the claimant was ever disciplined, either. At most, the record suggests that he had been called in a

few times for attitude conferences with the head nurse. And, in fact, he was given a positive performance evaluation.

In conclusion, while we are cognizant of the often subtle nature and difficulty of proving racial discrimination, we cannot say on the basis of this record that the referee capriciously disregarded any evidence thereof, and we must therefore affirm.

### ORDER

AND Now, this 8th day of February, 1980, the order of the Unemployment Compensation Board of Review in the above-captioned case is hereby affirmed.

Judge DISALLE did not participate in the decision in this case.