IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Adrianne McConville, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 32 C.D. 2015 |
| | : | Submitted: August 28, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                             FILED: November 10, 2015

Adrianne McConville (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) finding Claimant eligible for unemployment benefits under Sections 401 and 4(u) of the Unemployment Compensation Law (Law) in weeks where her hours were reduced.[1] The Board denied compensation for the weeks in which she could have worked full-time hours but chose to work fewer hours.[2] Claimant contends the Board erred because she did not choose to reduce her hours of work. We affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§801, 753(u). Section 401 states that "[c]ompensation shall be payable to any employee who is or becomes unemployed[.]" 43 P.S. §801.

[2] This appeal concerns benefit weeks from January 2012 through September 2012.

Claimant is a substitute librarian and has worked part-time for the Carnegie Library (Employer) since 1994. She remains employed by Employer, currently earning $20.70 per hour. In 2010, she worked a temporary part-time position at Employer's Brookline branch, which position ended in January 2012. At that point, Claimant returned to her prior position as a substitute at the Brookline branch. Because her weekly hours were reduced, Claimant filed for UC benefits.

The Duquesne UC Service Center granted Claimant benefits, finding she was entitled to a partial benefit to compensate for her reduced work hours. Employer appealed, asserting it had work available and that Claimant had opted to work fewer hours. A hearing was held before the Referee.

At the hearing, Karen Meharra, the manager of the "substitute pool" at Brookline, testified. Notes of Testimony (N.T.), 10/31/2012, at 6. She explained that substitutes can work anywhere from 0 to 35 hours a week, but they must work one shift per month in order to remain in active status. Meharra distributes a calendar with all of the available shifts to each member of the substitute pool, and substitutes respond by identifying the shifts for which they are available. Sometimes substitutes get the shift they requested, and sometimes they do not. Sometimes no substitute requests a particular shift. In that case, Meharra explained that she tries to fill the shift by sending an e-mail to every substitute on the e-mail distribution list. Claimant is on the e-mail distribution list and received Meharra's notices. Meharra noted that in 2012, Claimant requested fewer shifts and did not respond to e-mails for the unfilled shifts.

Meharra testified that in 2012, she had 1,201 substitute shifts available in the positions of librarian, assistant librarian and clerk.[3] Claimant was qualified to work in any of the three positions. Generally, Meharra gives a clerk first priority for a clerk shift and does the same for assistant librarians and librarians. An effort is also made to spread the hours as evenly as possible between each substitute.

Claimant requested to work 82 total shifts and received 55 of the shifts she requested. According to Meharra, "[t]here were many other shifts that [Claimant] could work but that's all that she asked for." N.T., 10/31/2012, at 18. In 2012, 28 shifts went unfilled. Meharra testified that "even though [Claimant] was available[,] she did not take those" shifts when asked. *Id*. at 6. Substitutes can access Employer's calendar daily, see what shifts remain available and contact Meharra for an assignment. Meharra considered Claimant to be a good employee and she "missed her not being – you know accepting any positions except for a few." *Id*. at 7.

Claimant testified that she worked part-time, averaging 25 hours per week from 2010 until January 2012. Since then, however, her "hours have dropped and haven't picked up…." *Id.* at 26. She claimed she was not selected to work because her hourly compensation was higher than many of the substitutes. *Id*. at 27.

The Referee found that Claimant chose to limit her work shifts and, thus, was not unemployed under Section 4(u) of the Law.[4] Claimant appealed to

---

[3] The Brookline branch has 18 locations where Claimant may work.

[4] Section 4(u) deems an individual

**(Footnote continued on the next page . . . )**

the Board, which ordered a remand for additional evidence and fact-finding. Specifically, it directed the Referee to determine how many hours Claimant worked during certain weeks; how often she checked the work calendar; and why she did not apply for the 28 shifts left unfilled.

At the remand hearing on January 29, 2013, Employer submitted additional evidence on the specific hours and days Claimant worked. Employer's witness, Paul Vanderwiel, the director of human resources, explained that the documentary evidence established that Claimant could have worked additional hours but chose not to do so.

Claimant testified that she checked the shift calendar at least once a day. With respect to the 28 shifts left unfilled, Claimant explained that her scheduled work intersected with three of those shifts and, thus, she could not take them. She also testified that she had requested all open shifts and could not explain why she was not scheduled to work.

Following the remand hearing, the Board vacated the Referee's determination and remanded the matter to the UC Service Center to calculate the number of hours in Claimant's "full-time work" week under 34 Pa. Code §65.73.[5]

---

**(continued . . . )**

> unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. §753(u).

[5] It provides:

> (a) A claimant's full-time work for purposes of section 4(u) of the law (43 P. S. §753(u)) shall be determined in accordance with the following:

**(Footnote continued on the next page . . . )**

4

**(continued . . . )**

(1) Except as provided in paragraphs (4) and (5), a claimant's full-time work is determined by reference to the claimant's base year, as follows:

(i) The total number of hours the claimant worked in the base year for all employers is divided by the number of weeks in the base year in which the claimant worked to determine the claimant's full-time work.

(ii) If information for only a portion of the base year is available, the formula in subparagraph (i) is applied to the portion of the base year for which information is available to determine the claimant's full-time work.

(iii) If the claimant's full-time work cannot be determined in accordance with subparagraph (i) or (ii), the Department may determine the claimant's full-time work by another method that calculates the average number of hours per week that the claimant worked during weeks in the claimant's base year in which the claimant worked.

(2) For purposes of paragraph (1), the number of hours that a claimant worked during a week in the base year for an employer in excess of the customary number of hours the claimant worked per week for that employer in the base year is excluded from the determination of the claimant's full-time work.

(3) For purposes of paragraph (1), if a claimant's normal work schedule in the base year consisted of multiple week cycles, and the cycle normally included one or more weeks during which the claimant did not work, all weeks in the cycle are deemed weeks in which the claimant worked.

(4) If a claimant voluntarily leaves employment to accept new employment that provides fewer hours of work, the number of hours the claimant customarily works at the new job constitutes the claimant's full-time work.

(5) If a claimant limits the number of hours per week the claimant will work, that number of hours constitutes the claimant's full-time work.

**(Footnote continued on the next page . . . )**

The Board explained that Claimant's full-time work hours needed to be established before it could be determined that her hours had been reduced, thereby rendering her "unemployed" within the meaning of Section 4(u) of the Law.

The UC Service Center issued a new determination that Claimant's normal full-time work week was 24 hours and that Claimant had worked at least 24 hours per week during the weeks at issue, *i.e.*, January 21, 2012, through September 22, 2012. As such, Claimant was not unemployed and not entitled to any benefits. The UC Service Center also issued a notice of non-fault overpayment for the claim weeks benefits were received.

Claimant appealed. On August 14, 2013, the Referee conducted another hearing to supplement the record from the prior hearings. Claimant was questioned about why she requested assignments to shifts for which she would not have "first priority." N.T., 8/14/2013, at 30. Claimant responded that she could only request shifts that were posted and "the majority of the times there are no librarian positions posted[.]" *Id.*

Meharra testified that she has managed the substitute pool since 2002. She reiterated that the substitutes provide her with a list of the shifts for which they are available. If there is a last minute opening or a shift no one has selected, she

---

**(continued . . . )**

> (b)  For purposes of section 4(u) of the law, if a claimant's normal work schedule during the benefit year consists of multiple week cycles, and the claimant normally works a different number of hours, which may include zero, during the weeks in the cycle, for each week in the cycle the claimant is deemed to be working the number of hours determined by dividing the total number of hours worked during the cycle by the number of weeks in the cycle.

34 Pa. Code §65.73.

6

notifies all the substitutes, who respond if interested. Meharra cannot require a substitute to work an unfilled shift.

The Referee calculated Claimant's full-time work week for her base year as 14.8 hours per week, "plus whatever additional hours she chooses to work." Referee Decision, 9/25/2013, Finding of Fact No. 10. The Referee concluded that Claimant's full-time work week had not been reduced and, thus, she was ineligible for benefits. Further, Claimant was issued a non-fault overpayment of $8,355. Claimant again appealed to the Board.

The Board rejected a key finding of the Referee. The Board found that Claimant's full-time work was 28 hours per week. The Board noted that in 2012, Claimant asked to be considered for 82 shifts, out of the total 1,201 substitute positions available. Further, on 22 occasions, Employer had a substitute position available of which Claimant was notified but did not request to work. For each of the months at issue, the Board made detailed findings on the number of shifts available, the number of shifts Claimant requested, the number of shifts Claimant received and the dates, if any, of the unfilled shifts in that month.

The Board concluded that Claimant was entitled to unemployment benefits in any week she worked less than 28 hours, if she had established a willingness to work 28 hours in that particular week. The Board rejected Claimant's contention that she was willing to work 28 hours a week, every week, as not credible because on 22 occasions work was available to her but she did not request the shift. The Board found that Claimant "was not unemployed for those weeks as she limited the hours she was available." Board Adjudication, 12/22/2014, at 6. The Board listed the weeks involving unfilled shifts as the week

7

of February 24, 2012, the week of March 3, 2012,[6] "the weeks involving April 4, 6, 9, 18, 19, 26 and 28, 2012; the weeks of May 5, 8, 10, and 12, 2012; the weeks of June 7, 9, 15, 16, 18, 19, 23, 25, 26, 29, 2012, and September 1, and 26, 2012." *Id.* Further, Claimant applied for six shifts in July and was assigned those shifts. Accordingly, the Board concluded she was not unemployed for the month of July.

The Board reversed the Referee in part. It denied benefits for certain weeks but found Claimant was "not ineligible for benefits under Section 401 and Section 4(u) for the remainder of the applicable weeks." *Id.* at 7.[7]

In her petition for this Court's review, Claimant raises one issue.[8] Claimant argues that the Board erred in finding she was not unemployed during all benefit weeks at issue, because she attempted to work additional hours. The Board counters that Claimant's argument simply requests that her version of the case be accepted, without identifying an error on the Board's part.

Section 401 of the Law makes compensation payable to an employee who "becomes unemployed." 43 P.S. §801. Section 4(u) of the Law defines "unemployed" as follows:

> An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the

---

[6] In its brief, the Board notes its typographical errors in listing the February and March dates as occurring in 2013.

[7] The Board noted that Claimant's non-fault overpayment needed to be recalculated based on its determination.

[8] Our scope of review determines whether constitutional rights were violated, an error of law occurred, or whether the factual findings are supported by substantial evidence of record. *Lello v. Unemployment Compensation Board of Review*, 59 A.3d 1153, 1156 n.3 (Pa. Cmwlth. 2013).

8

> remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. §753(u). Claimant argues that her normal "full-time work" week was 25 hours per week and that her work week was reduced through no fault of her own when she was placed in the substitute pool in January 2012.[9] Claimant further argues that she attempted to increase her work hours by applying for available shifts but ended up working fewer than 25 hours per week.

The Board is the ultimate fact-finder and has the authority to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. *Dumberth v. Unemployment Compensation Board of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003). Where substantial evidence supports the Board's findings, they are conclusive on appeal. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review,* 879 A.2d 388 (Pa. Cmwlth. 2005). Substantial evidence exists if the record "taken as a whole" supports the findings. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). On appeal, this Court's

> duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists.

*Id*.

---

[9] Claimant seems not to appreciate the fact that the Board's finding that her full-time work week was 28 hours resulted in more reduced hours, thereby increasing her eligibility for unemployment benefits.

9

Employer's evidence established that on 28 occasions it had no substitute to fill a shift. Claimant was notified of each opportunity and chose not to accept the shift.[10] Claimant countered that on three of these occasions, her schedule conflicted with the unfilled shift. Claimant did not account for the other 25 occasions. The Board found that on 22 occasions Claimant did not request the shift assignment even though it did not conflict with her schedule. Board Adjudication, 12/22/2014, Finding of Fact No. 9. Even after "[C]laimant was notified of this availability [she] did not contact [Employer]." *Id.* Claimant did not challenge this factual finding of the Board. In fact, Claimant did not challenge any of the Board's factual findings. "If a petitioner fails to challenge the Board's factual findings, they are conclusive on appeal." *Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492, 494 (Pa. Cmwlth. 2000).

The Board's factual findings specifically identified the weeks when work was available to Claimant but she chose not to request an assignment. Claimant does not dispute that in July 2012, Employer scheduled her for every shift she requested. In short, the evidence supports the Board's conclusion that Claimant was not "unemployed" within the meaning of Section 4(u) of the Law for the weeks in question.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

---

[10] The Board rejected Claimant's statement that she wanted to work more hours as "not credible" based on "22 occasions when [she] failed to request work and [Employer] had no employee to fill those shifts." Board Adjudication, 12/22/2014, at 6.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adrianne McConville,
      Petitioner

      v.

Unemployment Compensation
Board of Review,
      Respondent

:
:
:
: No. 32 C.D. 2015
:
:
:
:

## **O R D E R**

AND NOW, this 10th day of November, 2015, the order of the Unemployment Compensation Board of Review, dated December 22, 2014, is AFFIRMED.

_____

MARY HANNAH LEAVITT, Judge