**[J-73-2019][M.O. - Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| DONALD LOWMAN, | : | No. 41 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | 1/24/18 at No. 686 CD 2016 reversing |
| v. | : | and remanding the order entered on |
| | : | 4/22/16 by the Unemployment |
| | : | Compensation Board of Review at |
| UNEMPLOYMENT COMPENSATION | : | Nos. B-15-09-H-3978 and B-586362-A |
| BOARD OF REVIEW, | : | |
| | : | |
| Appellant | : | ARGUED:  September 11, 2019 |

*DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                                   **DECIDED:  July 24, 2020**

An analysis of the "control" and "independence" factors involves consideration of a number of different factual circumstances, some of which pertain to both facets of the Section 4(l)(2)(B) standard.  As the majority recognizes, the Commonwealth Court has listed several such circumstances, including

> how the claimant was paid; how taxes on the claimant's earnings were paid; whether the claimant or the person for whom she worked supplied tools or equipment necessary to perform the services; whether the person for whom claimant worked provided on-the-job training; whether claimant was required to attend meetings or report on her work; who set the time and location of the work; whether the claimant's work was subject to supervision or review; the terms of any written contract between the parties; the degree to which the claimant was directed with respect to the work; and whether the claimant was free to refuse work assignments without repercussions.

*Stauffer v. UCBR*, 74 A.3d 398, 405 (Pa. Cmwlth. 2013), *cited in* Majority Opinion, *slip op.* at 42; *see also Razak v. Uber Techs., Inc.*, 951 F.3d 137, 145-46 (3d Cir. 2020).

In discussing these types of considerations, the majority, in my view, attributes substantial weight to those which suggest Appellee was subject to Uber's control, but does not assign sufficient import to those militating against such a finding. With regard to income taxes, for example, Uber gave Appellee an IRS 1099 form, which "reports miscellaneous income for individuals and entities that received payment of at least $600 for *non-employee services* during a given calendar year." *Cooper v. Schoffstall*, 588 Pa. 505, 509 n.2, 905 A.2d 482, 485 n.2 (2006) (emphasis added). As well, Uber contributed only two items to Appellee's activities: access to the mobile application, and a physical Uber decal – the latter of which was supplied as needed for legal and/or regulatory compliance. *See In re Lowman*, Decision No. B-586362-A, Finding No. 6 (UCBR Apr. 22, 2016) ("Board Decision"); *see also* Software License and Online Services Agreement (last updated Nov. 10, 2014), ("Agreement"), at ¶2.4 (stating that, except as required by law, Uber lacked the right to require Appellee to display its name or logo, or wear a uniform containing its emblem).

Further, the Board found that Uber allowed Appellee to perform driving services independently or for its competitors such as Lyft. *See* Board Decision, Finding No. 14. Separately, the majority appears to treat the e-mail and text message exchanges, which contained guidance as to how drivers could maximize their driving experiences, as a form of training "in lieu of face-to-face encounters in brick and mortar meeting rooms." Majority Opinion, *slip op.* at 45. The Board, however, expressly found that "Uber did not train the claimant," adding that it only provided "guidance." Board Decision, Finding Nos. 3, 8.

I also find it salient that, although Uber mandated that Appellee fulfill ride requests at least once each month, *see* Agreement, at ¶2.1, one ride per month is a particularly

lax requirement and, as such, does not seem consistent with anything more than *de minimus* control by Uber. Just as important, Appellee had the flexibility to choose which days or hours he wanted to work, and he was free to accept or decline any specific ride request. While the majority suggests this right may have been "illusory," Majority Opinion, *slip op.* at 49, the Board, as the ultimate fact-finder, *see Peak v. UCBR*, 509 Pa. 267, 276, 501 A.2d 1383, 1388 (1985), determined otherwise. *See* Board Decision, Finding No. 7 (concluding Appellee "was able to accept and refuse assignments through Uber's mobile phone application"). Because the Board's finding, which is supported by the terms of the Agreement, is binding on this Court, *see Taylor v. UCBR*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977) (observing that, in an unemployment compensation dispute, findings by the Board are conclusive so long as they are supported by substantial record evidence), I believe it is beyond our present appellate function to re-weigh the evidence and arrive at a contrary determination along the lines of that articulated by the majority.

By contrast, I would assign little if any weight to Appellee's assertion, during the hearing before the referee, that he subjectively considered himself an employee. *See* Majority Opinion, *slip op.* at 46. Particularly as Appellee was seeking benefits, this type of self-serving statement says little about the actual employment relationship which existed at the time Appellee was performing Uber-related driving services. It is also unpersuasive in light of other factors such as the content of the Agreement, which states that Uber "does not, and shall not be deemed to, direct or control you generally or in your performance under this Agreement specifically, including in connection with your provision of Transportation Services," Agreement, at ¶2.4, and certain findings made by the Board – some of which have been noted above – such as that: Uber did not set Appellee's hours or train him; Appellee used his own vehicle and was not reimbursed for

mileage or fuel; and Appellee was allowed to drive for Uber's competitors. *See* Board Decision, Findings Nos. 3, 5, 9, 13, 14.[1]

Nor would I attribute significance to the fact that Appellee could not "deviate from the destination provided by the passenger when requesting the ride service from Uber." Majority Opinion, *slip op.* at 44. That circumstance is due to the nature of a ride request and has nothing to do with Uber's control over Appellee or lack thereof. Indeed, few customers ever hire a taxi or similar service simply to go on a ride with no fixed destination.

In terms of the independence factor, the majority emphasizes that an Uber customer would not have been able independently to seek out Appellee's services, and hence, Appellee's "ability to develop a separate relationship with clients was not existent." *Id.* at 47. But this shifts the focus from Appellant to the end user, as it speaks to what an Uber customer could do and says nothing about whether Appellee could, separately from Uber, sell his services to individuals who were not Uber customers. It does not, for example, negate that, as discussed, Appellee could offer his services through a competing platform or drive independently for non-Uber customers.

Finally, under the majority's reasoning, in considering multiple drivers working for Uber pursuant to identical contracts, some may be deemed Uber employees and others may be adjudicated as independent contractors, depending on their non-Uber activities. To my mind, this is an untenable result.

Accordingly, I would reverse the Commonwealth Court's order and reinstate the Board's determination that Appellee was an independent contractor for Uber. As such, I respectfully dissent.

---

[1] In this regard, I am not aligned with the majority's suggestion that "what a claimant could do" or "could have done," is never relevant to the question of whether he or she was an employee. Majority Opinion, *slip op.* at 41.

Justice Mundy joins this dissenting opinion.