# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Dixon, :
                  Petitioner :
                          :
           v. : No. 1900 C.D. 2013
                          : Submitted: June 27, 2014
Unemployment Compensation :
Board of Review, :
               Respondent :


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED:  July 23, 2014**


Petitioner Linda Dixon (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed an Unemployment Compensation Referee's (Referee) decision denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we affirm the Board's order.

Claimant filed for unemployment compensation benefits after being discharged from her employment as a Senior Nursing Aid with The Children's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Hospital of Philadelphia (Employer) on November 29, 2012. The Erie UC Service Center (Service Center) issued a determination denying benefits to Claimant based on willful misconduct. (Certified Record (C.R.), Item No. 5.) The Service Center also determined that Claimant was ineligible for backdating credit under Section 401(c) of the Law,[2] because Claimant failed to prove that her reason for not filing her claim in a timely manner was one which would permit backdating of the claim under 34 Pa. Code § 65.43a.[3] (*Id.*) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

At the hearing, Claimant was not represented by counsel, and she did not present any witnesses. (C.R., Item No. 9.) Employer was represented by its Tax Consultant Representative, Joseph Piunti (Piunti), and presented two witnesses, Zene Colt (Colt) and Denise Pavan (Pavan). (*Id.*) The Referee began by asking Claimant background questions concerning her employment with Employer. (*Id.* at 6.) Claimant testified that Pavan was the one who told her that her employment was being "terminated" for dishonesty regarding her timesheet. (*Id.* at 7.)

Next, the Referee spoke to Colt, who affirmed Claimant's work history with Employer. (*Id.* at 8-9.) Colt testified that Claimant's employment was "terminated for falsification of timesheet records" in violation of one of Employer's policies. (*Id.* at 9-10.) Colt testified that Claimant had access to the

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(c).

[3] 34 Pa. Code § 65.43a provides, in pertinent part, that an application for benefits may be backdated "if the claimant did not file the application for a reason [listed within this section]."

policies and that this single offense can lead to termination. (*Id.* at 10.) Colt explained:

> On March 15th, as indicated on the STAR update form completed by Ms. Dixon, Ms. Dixon claims that she reported to work at 7:00 p.m. Upon investigation conducted by Ms. Pavan and also which I was party to the footage from the security video as well as the swipe report, which the swipe report is your service Center 13 Exhibit, shows that Ms. Dixon did not arrive at Children's Hospital Philadelphia on March 15th until close to 8:00 p.m. although her star update sheet says 7:00 p.m.

(*Id.* at 11.) Colt stated that he was made aware of the incident when Pavan informed him that another employee reported that Claimant asked the employee to complete a timesheet for her. (*Id.*) Colt testified that the other employee's concern is what prompted the investigation. (*Id.*)

Pavan testified that Claimant was scheduled to begin work at 7:00 p.m., but review of the record of Claimant's swipes in and out of the building revealed that her earliest swipe was at 7:58 p.m. (*Id.* at 16.) Pavan explained that she reviewed the surveillance footage, and it showed Claimant entering the building at 7:58 p.m. with her ID around her neck. (*Id.* at 17.) Pavan stated that she asked Claimant to complete a timesheet to indicate the hours she worked on March 15, 2012, so that she could be paid for the shift. (*Id.*) Pavan testified that Claimant did not fill out the timesheet until April 28, 2012. (*Id.* at 17.) On the timesheet, Claimant indicated that she started her shift at 7:00 p.m. (C.R., Item No. 3.) Pavan said that she and Claimant corresponded through email, and she asked Claimant for proof that she actually started at 7:00 p.m., as opposed to 7:58 p.m. as the records indicated. (C.R., Item No. 9, at 18-19.) Pavan further testified

3

that Claimant failed to provide any satisfactory documentation as proof. (*Id.* at 20.)

The Referee asked Claimant why she did not swipe in to work at 7:00 p.m. if that was the time she started. (*Id.* at 22.) Claimant testified that she did not swipe in to work at 7:00 p.m., because she did not have her ID until her sister brought it to her at around 7:30 p.m. while Claimant was on break. (*Id.* at 22-23.) Claimant explained that the ID that she was seen wearing in the surveillance video was her school ID and not the ID provided by Employer. (*Id.* at 23.) Claimant testified that she never had her sister testify on her behalf at any of the grievance hearings, and she could not provide any documentation to prove that she had gone on break or bought food at around 7:30 p.m. on the day in question. (*Id.* at 25.)

Following the hearing, the Referee issued a decision and order affirming both of the Service Center's determinations. (C.R., Item No. 10.) The Referee made the following findings of fact regarding Claimant's compensability for unemployment benefits:

1. The Claimant was employed as a Senior Nursing Aid from November 7, 2005[,] until November 29, 2012; at the time of separation the Claimant was working 32 hours per week and was earning $21.33 per hour.

2. The Employer has a policy which provides:

   Employees are required to be truthful in all work-related activities. Falsification by omission or commission, either verbally or in writing with respect to work-related materials or information, including on the employment application or during the application process will warrant discharge.

4

3. The Claimant was or should have been aware of the Employer's policy concerning honesty.

4. On March 15, 2012[,] the Claimant was scheduled to work from 7:00 p.m. to 7:30 a.m.

5. The Employer's [e]mployees are required to record their time of arrival by swiping an Employer[-]supplied Identification Card.

6. The Claimant did not swipe her card to record her arrival until 7:58 p.m., 58 minutes after her scheduled arrival time.

7. On or about the end of March 2012, the Employer received reports that the Claimant had asked other workers to complete a "STAR Time Record Update Request" for the Claimant concerning her missing arrival swipe for March 15, 2012.

8. The Employer commenced an investigation into the allegation that the claimant had failed to record her arrival for work by "swiping in" using her Employer-issued identification card.

9. On April 28, 2012[,] the Claimant provided the Employer with a STAR Time Record Update Request indicating that she had arrived for work at 7:00 p.m.

10. The Employer asked the Claimant to provide documentation demonstrating that she had arrived at 7:00 p.m. rather than 7:58 p.m. as indicated by video surveillance. The Claimant failed to provide such documentation.

11. The Claimant was discharged for falsification of time sheet record i.e., the STAR Time Record Update Request indicating that she had arrived for work at 7:00 p.m.

5

(C.R., Item No. 10.) The Referee determined that Employer fired Claimant for willful misconduct, because she "failed to provide documentary evidence to the Employer in support of her testimony" that she did not falsify her time sheet record. (*Id.*)

Claimant appealed to the Board, which affirmed the Referee's decisions and orders. (C.R., Item No. 12.) In so doing, the Board adopted and incorporated the Referee's findings and conclusions. (*Id.*) Claimant now petitions this Court for review.

On appeal,[4] Claimant essentially argues (1) that the Referee's findings of fact, as adopted and incorporated by the Board, were not supported by substantial evidence,[5] and (2) that the Referee committed an error of law by placing the burden of proof on Claimant instead of Employer.[6]

We first address Claimant's argument that the Board's findings were not supported by substantial evidence. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings,

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] While Claimant fails to specifically challenge any individual finding of fact, it appears that it is Claimant's intent to challenge finding of fact number 11, which provides that she was discharged for falsification of her timesheet.

[6] Claimant does not appeal the Board's determination that Claimant's application for benefits was ineligible for backdating under 34 Pa. Code § 65.43a.

6

this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

In an unemployment case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

7

Here, Exhibits 13 and 14, Employer witnesses' testimony, as well as Claimant's own testimony, constitute substantial evidence to support the Referee's finding, as incorporated by the Board, that Claimant was terminated for falsification of her timesheet. Finding of fact number 11 provides: "The Claimant was discharged for falsification of time sheet record i.e., the STAR Time Record Update Request indicating that she had arrived for work at 7:00 p.m." (C.R., Item No. 10.) Exhibit 13 affirms Employer's position that Claimant's first swipe during her shift on March 15, 2012, was at 7:58 p.m. (C.R., Item No. 9, at 15.) Exhibit 14 shows that Claimant indicated on her timesheet that she began her shift at 7:00 p.m. (*Id.* at 16; C.R., Item No. 3.) The Referee found credible Pavan's testimony that she gave Claimant many opportunities to provide documentation to prove that she arrived to work at 7:00 p.m., and Claimant failed to do so. (C.R., Item No. 10.) In Claimant's own testimony, she admits that she was unable to provide Employer with any proof to support her contention that she arrived at work at 7:00 p.m. (C.R., Item No. 9, at 25.) This evidence, taken as a whole and viewed in a light most favorable to Employer, supports the Referee's finding that Claimant was terminated for falsifying her timesheet. Thus, the findings of fact are supported by substantial evidence and are conclusive.[7]

---

[7] Claimant also attempts to argue that Employer witnesses' testimony regarding what they saw on the surveillance footage constitutes hearsay and is not supported by competent evidence. (Petitioner's Brief at 8.) However, the rule against hearsay only applies to "statements," which include "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." 225 Pa. Code § 801(a). Thus, Claimant's argument is unavailing, because Employer witnesses' testimony as to what they saw on the surveillance does not constitute hearsay.

Next, we address Claimant's argument that the Referee committed an error of law by placing the burden of proof on Claimant instead of Employer. Claimant is correct in stating that in order for an individual to be denied unemployment compensation benefits under Section 402(e) of the Law, the employer bears the burden to prove that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). In this case, the Board properly placed the burden on Employer. (C.R., Item No. 9, at 2.) Employer met its burden by calling witnesses and providing documentary evidence to support its position that Claimant engaged in willful misconduct in connection with her employment by falsifying her timesheet record and thereby violating Employer's policy. (*See generally*, C.R., Item No. 9.) In her brief, Claimant contends that the Referee misplaced the burden, and, as support, Claimant quotes the Referee as stating that "Claimant acknowledged that she had failed to provide documentary evidence to the Employer in support of her testimony that she had arrived early for work." (Petitioner's Brief, at 10.) The Referee's statement, however, was not meant to place any burden on Claimant with regard to proving or disproving willful misconduct. Instead, the Referee's statement merely indicates that due to Claimant's failure to provide any documentation to support her claim, the evidence weighs in Employer's favor. Accordingly, neither the Referee nor Board committed an error of law with regard to the burden of proof.

For the foregoing reasons, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Dixon, : 
                Petitioner : 
                 : 
         v. : No. 1900 C.D. 2013
                 : 
Unemployment Compensation : 
Board of Review, : 
            Respondent : 

## **O R D E R**

AND NOW, this 23rd day of July, 2014, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

                                    _____

                                    P. KEVIN BROBSON, Judge