IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnold Gibbs,                                   :
              Petitioner        :
                                :   No.  901 C.D. 2015
             v.                 :
                                :   Submitted:  September 18, 2015
Unemployment Compensation                       :
Board of Review,                                :
              Respondent        :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                        FILED:  November 16, 2015

         Arnold Gibbs (Claimant) petitions *pro se* for review of the May 12, 2015 order of the Unemployment Compensation Board of Review (Board), affirming a referee's determination that Claimant is ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1]  For the following reasons, we affirm.

         Claimant was employed as a full-time truck driver with Superior Plus Energy Services (Employer) from November 20, 2013, to February 2, 2015, when he was discharged for failing to comply with a supervisor's directive.   The local service center determined that Claimant was not ineligible for benefits under section 402(e) of the Law, and Employer appealed.  A referee held a hearing on March 30, 2015.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

At the hearing, Employer offered the testimony of Kevin Dunlap, Employer's customer service center manager. Dunlap testified that on January 21, 2015, Claimant was delivering propane to a rural agricultural location and attempted to navigate a logging road marked "no winter maintenance" that was covered with approximately one foot of snow. Dunlap stated that Claimant was driving a large propane truck that weighed approximately forty-thousand pounds and was filled to approximately three-quarters of capacity. Dunlap noted that Claimant had previously made deliveries to the rural location, but he had never approached it from this direction. Dunlap testified that Claimant told him he decided to take that route because his GPS recommended it and he thought that he could pass it without incident. Dunlap further testified that Claimant navigated the road for approximately three-quarters of a mile until he was unable to traverse a hill. Dunlap stated that, at that point, Claimant backed the vehicle down the hill and attempted to maneuver the truck to the right of the road, which caused the vehicle to get stuck. Dunlap testified that the truck's location posed a significant hazard because one side of the road dropped off approximately twenty feet and the other side bordered a creek, which could be compromised and constitute an environmental hazard if any propane was released. Dunlap stated that Employer requested the assistance of the state police and local fire department to restrict the road from any traffic until the vehicle could be towed the next day; however, the police determined that the tow should be performed immediately because large four-wheel drive vehicles frequently used the logging road. Dunlap noted that the cost to tow the vehicle was approximately $4,400.00 and the truck sustained approximately $2,000.00 in damage. (Notes of Testimony (N.T.) at 5-7, 10, 13.)

Dunlap testified that he drove one of Employer's vehicles to retrieve Claimant from the incident scene and return him to Employer's facility. Dunlap stated that, during the return to Employer's facility, he directed Claimant to provide a written statement regarding the incident before he returned home. Dunlap testified that this instruction was typical for this type of incident because a statement was necessary for insurance purposes. Dunlap further testified that, when they returned to Employer's facility, he again told Claimant that he must provide a written statement regarding the incident before going home. (N.T. at 7.)

Dunlap stated that, when they returned to Employer's facility, Claimant left without providing a statement of the incident. Dunlap noted that Claimant returned to Employer's facility later that evening to return the keys to the damaged vehicle and that Claimant was again advised that he must provide a statement; however, Claimant left without complying. Dunlap stated that Employer was required to report the incident to its insurance company that same day, and it did not have a statement of events to include in its report. Dunlap noted that this directive was standard procedure and recounted two recent incidents involving Employer's vehicles where employees were required to provide a statement before returning home. Dunlap stated that Claimant did not provide a written statement until his termination date. (N.T. at 6-7, 13, 21.)

Dunlap further testified that Employer's policy requires employees to participate in any investigations Employer conducts based on incidents involving its vehicles. Dunlap stated that the policy is contained in Employer's employee handbook, which Claimant received when he began employment with Employer.[2]

---

[2] Employer offered into the record an unsigned and undated "Receipt of Employee Safety Handbook" with Claimant's name printed at the bottom of the page. (N.T. at 12.)

3

Dunlap testified that Employer's policy provides a three-day suspension for an employee's failure to provide a statement for an investigation and that an employee will be terminated if noncompliance continues. Dunlap noted that getting a vehicle stuck and failing to provide a statement are both dischargeable offenses; however, he stated that Claimant would not have been discharged if he had provided a statement when he returned to Employer's facility or when he returned the keys to the vehicle later that evening. Dunlap testified that Claimant was notified that evening that he was suspended pending the outcome of Employer's investigation and that Claimant was discharged on February 2, 2015, for failure to provide a written statement regarding the incident with Employer's vehicle as directed by his supervisor. (N.T. at 5, 11-15.)[3]

---

[3] At first, Dunlap testified that Claimant was only suspended for three days. However, after clarification, it was established that Claimant was instead suspended pending the outcome of Employer's investigation:

R:      Okay. Now tell me about the suspension business. I don't have that.
EW:    When he did provide the . . .

R:      Right
EW:    . . . statement . . .

R:      On the 21st.
EW:    . . . we decided to suspend him while we did our investigation.

R:      So when was he suspended?
EW:    The date of the incident which would have been the 21st I believe. I think that was the date of the incident was the 21st.

R:      Okay. But when – no, no, which days was he actually suspended then?
EW:    It would have been the 22nd, 23rd, and 24th.

R:      Okay. Then what happened between the 24th and February 2nd?

**(Footnote continued on next page…)**

Employer offered into the record seven pictures that Dunlap took the evening the incident occurred. The pictures showed the conditions of the logging road that Claimant navigated, such as the depth of the snow, the location of the "no winter maintenance" sign, and the position of the stuck vehicle. (N.T. at 8-9.)

Claimant provided a different account of the events preceding his discharge. Claimant acknowledged that Dunlap discharged him on February 2, 2015, because he failed to provide a written statement regarding the incident with the propane truck. However, Claimant stated that the only time Dunlap asked him for a statement was during the return to Employer's facility. Claimant testified that he returned home without providing a written statement because he suffers from pancreatitis, he was hungry, and he did not feel well because he spent the entire day with the stuck vehicle. Claimant stated that he received a phone call from Dunlap approximately two hours after returning home advising Claimant that he was suspended for three days and that they would discuss the suspension the following Monday. Claimant further testified that when he returned to Employer's facility later that evening to return the keys to the damaged vehicle, Dunlap did not direct him to provide a written statement. Claimant stated that when he arrived at Employer's

---

**(continued…)**

> EW: I believe it was a weekend if I recall. 24th, 25th . . .
>
> R: There's a whole week in between there, 26, 27, 28, 29, and 30.
> EW: Oh, yes. We . . .
>
> R: Was he back at work or what?
> EW: We – no. He was – in this situation, because he didn't provide the statement, we suspended him pending the outcome of the investigation.

(R.R. at 14-15.)

facility the following Monday, he delivered a written statement regarding the incident with Employer's vehicle; nevertheless, at that time, Dunlap asked him to sign a piece of paper indicating that Claimant was being terminated for failing to provide the statement as directed. Claimant testified that he advised Employer the week before the incident that it was unsafe to send drivers to that rural location the day after a snowstorm and that he did not want to make deliveries there. Claimant stated that he did not see the "no winter maintenance sign" and was completely dependent on the GPS. Claimant acknowledged that he was aware that he was required to provide a written statement, but said he was unaware that the statement must be provided that evening. (N.T. at 15-16, 20.)

Following the hearing, the referee made the following relevant findings of fact:

> 11. On the way back to the employer's facility, the customer service center manager instructed the claimant to complete an incident report related to the accident, by the end of the day for insurances purposes.
>
> 12. When they arrived back at the employer facility, the claimant was again told to prepare a written statement regarding the accident before he left for the day.
>
> 13. The claimant left for the day without preparing the statement.
>
> 14. The claimant was suspended from his job effective January 22, 2015 pending the results of an investigation.
>
> 15. The claimant was discharged from employment on February 2, 2015, for failure to provide a written statement regarding the mishap with his truck as instructed by the end of the day on January 21, 2015.

(Findings of Fact Nos. 11-15.)

6

By decision and order dated April 1, 2015, the referee resolved any conflicting testimony in Employer's favor and credited Dunlap's testimony that he advised Claimant twice on January 21, 2015, to prepare a written statement before returning home that day. The referee concluded that Claimant's disregard of Employer's directive constituted willful misconduct connected with his work. Consequently, the referee reversed the local service center's decision and determined that Claimant was ineligible for benefits under section 402(e) of the Law. Claimant appealed to the Board, which affirmed the referee's decision and adopted the referee's findings and conclusions of law.

On appeal to this Court,[4] Claimant argues that the Board's decision is not supported by substantial evidence. We disagree.

Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. The Law does not define the term "willful misconduct." However, our courts have defined it as including: (1) conduct that evidences a willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Hager v. Unemployment Compensation Board of Review*, 482 A.2d 1368, 1370 (Pa. Cmwlth. 1984).

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether findings of fact are supported by substantial evidence. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162 n.2 (Pa. Cmwlth. 2013).

An employee's refusal to comply with an employer directive may constitute willful misconduct. *Pryor v. Unemployment Compensation Board of Review*, 475 A.2d 1350, 1352 (Pa. Cmwlth. 1984). When an employee is discharged for refusing to comply with an employer's directive, the reasonableness of the employer's request must be balanced against the employee's justification for noncompliance under the circumstances. *Wilkerson v. Unemployment Compensation Board of Review*, 399 A.2d 1188, 1189 (Pa. Cmwlth. 1979). An employee does not commit willful misconduct when the alleged misconduct is justifiable and reasonable under the circumstances. *Patterson v. Unemployment Compensation Board of Review*, 430 A.2d 1011, 1013 (Pa. Cmwlth. 1981). "It is well-settled that an employer bears the burden of establishing willful misconduct and . . . where such misconduct involves . . . the refusal to obey an employer's directive, the employee bears the burden of proving good cause for his refusal." *Connelly v. Unemployment Compensation Board of Review*, 450 A.2d 245, 246 (Pa. Cmwlth. 1982).

Although the issue of whether an employee's conduct constitutes willful misconduct is a matter of law, the Board is the ultimate fact finder. *Hager*, 482 A.2d at 1370. "It is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board . . . are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). In determining whether substantial evidence exists, "[t]he appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony." *Id.*

Claimant challenges the Board's finding that Dunlap twice directed him to provide a written statement regarding the incident before he returned home. Claimant asserts that Dunlap only told him to submit a statement once, in passing, during the return to Employer's facility and did not indicate that there was any time by which the statement must be delivered.

In making this argument, Claimant relies on his preferred version of the facts rather than the facts as found by the Board. It is well settled that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Miller v. Unemployment Compensation Board of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979). Thus, "[t]he fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 223 (Pa. Cmwlth. 2012). In this case, Dunlap's credible testimony supports the Board's findings of fact and, thus, they may not be disturbed on appeal. These findings, in turn, support the Board's legal conclusion that Claimant was discharged for willful misconduct.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnold Gibbs,                          :
                Petitioner      :
                         :      No.  901 C.D. 2015
           v.                   :
                         :
Unemployment Compensation              :
Board of Review,                       :
               Respondent      :

## _ORDER_

AND NOW, this 16th day of November, 2015, the order of the Unemployment Compensation Board of Review, dated May 12, 2015, is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge