<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

East Wheatfield Township,          :
            Petitioner        :
                                :
       v.                   :
                                :
Unemployment Compensation    :
Board of Review,             :   No. 35 C.D. 2024
            Respondent    :   Submitted: June 3, 2025


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED:  August 22, 2025

East Wheatfield Township (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) December 20, 2023 order reversing the Referee's decision that denied Colleen Rudnik (Claimant) UC benefits under Section 402(b) of the UC Law (Law).[1]  Essentially, the issue before this Court is whether Claimant had a necessitous and compelling reason for leaving her employment.[2]  After review, this Court affirms.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to leaving work without cause of a necessitous and compelling nature).

[2] In its Statement of Questions Involved, Employer presents two issues for this Court's review: (1) whether the UCBR committed an error of law, violated Employer's constitutional rights, or failed to base the essential findings of fact on substantial evidence, when it ruled that Claimant had necessitous and compelling reasons for leaving her employment; and (2) whether the UCBR committed an error of law, violated Employer's constitutional rights, or failed to base the essential findings of fact on substantial evidence, when it relied solely on *Comitalo v. Unemployment Compensation Board of Review*, 737 A.2d 342 (Pa. Cmwlth. 1999), to support its determination that Claimant had necessitous and compelling reasons to voluntarily terminate her employment and was therefore eligible to receive UC benefits.  *See* Employer Br. at 4.  These issues are subsumed in the issue as stated by this Court and will be addressed accordingly.

Employer employed Claimant as a full-time secretary/treasurer from January 2, 2013 until May 3, 2022. Employer also employed Claimant's husband, Douglas Rudnik (Rudnik), as a Supervisor on its Board of Supervisors (Board). On April 6, 2022, Claimant sent a memorandum (Memo) to Employer's road crew, Tom,[3] Gary,[4] and Randy,[5] stating:

> This [M]emo is for me to say that I will not be responsible for monitoring the time[]clock anymore.
>
> The reason we have to have a time[]clock is because of your actions. The time[]clock was never my idea! For years Gary got here early and would be inside when I got here. Then all of a sudden, when I got here, he would be sitting in his car. I didn't think much of it at first, but then I noticed that Randy would be sitting in his car too, and neither of you would go in until I opened the office door and punched in my code that unlocked both partitions. You guys didn't punch in your own code for a couple [of] months! That was pretty unusual. And during that time, Tom was getting to work ten minutes late every morning - almost an hour of free time every week. I didn't know why you were using me to unlock your alarm and why Tom was getting here late all of a sudden after years of always being on time. So, I told [Board Chairman] Ken[neth Unholtz (Chairman Unholtz)]. [Chairman Unholtz] said we'd solve that by getting a time[]clock. Now we all have to punch in and out. Again, not my idea to have to punch a time[]clock every day.
>
> I was told to monitor the time[]clock report. In January[,] I saw a discrepancy in the time of the time[]clock and the time entered on the timesheets. I didn't say anything then because I didn't want anyone getting mad at me. But then it appeared to have happened again.
>
> From now on[,] I will not be responsible for monitoring the time[]clock. I will print a copy of the report for every [S]upervisor and attach it to a copy of everyone's

---

[3] It appears that *Tom* refers to Thomas Currie, who was Employer's Roadmaster.
[4] Gary's last name is not identified in the UCBR's Certified Record.
[5] Randy's last name is not identified in the UCBR's Certified Record.

2

timesheets, and they'll become part of the agenda for review by the [S]upervisors at all Board meetings.

Reproduced Record (R.R.) at 86a.

After Claimant sent the Memo, a road crew worker began slamming the door between the shop and the office twice daily when clocking in and out. The door was a short distance from Claimant's workspace. Claimant, who suffers from stress-aggravated Crohn's disease, began working four ten-hour days, rather than five eight-hour days to avoid dealing with the door slamming.

On May 3, 2022, Claimant and Rudnik attended a Board meeting. At the public meeting, also attended by Chairman Unholtz and Township Supervisor Clarence Stiles (Stiles), Chairman Unholtz verbally attacked Claimant. During the meeting, Chairman Unholtz angrily told Claimant that she should not have sent the Memo; rather, it should have come from the Board. Chairman Unholtz yelled at Claimant that she threw him under the bus, she had no right to send the Memo, she was a troublemaker from the start, she did not know how to do her job, and he wished he had never hired her. When Rudnik tried to defend Claimant, Chairman Unholtz told Rudnik that "the road crew hated him." R.R. at 74a; *see also* R.R. at 128a (UCBR's Finding of Fact (FOF) No. 10). Chairman Unholtz then looked at Claimant and said: "They don't like you either." R.R. at 74a; *see also* R.R. at 128a (UCBR FOF No. 11). Claimant and Rudnik both verbally resigned their employment at the meeting. Chairman Unholtz continued yelling at both Claimant and Rudnik while they took their belongings and left the meeting. On April 7, 2022, Chairman Unholtz sent a text message to Rudnik apologizing for his behavior and asking Rudnik to reconsider his resignation. Claimant did not receive such a text message from Chairman Unholtz.

On May 25, 2022, Claimant applied for UC benefits. On October 12, 2022, the Erie UC Service Center determined that Claimant was ineligible for UC

3

benefits under Section 402(b) of the Law. Claimant appealed from the UC Service Center's determination. On December 19, 2022, the Referee held a hearing. On December 21, 2022, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On December 20, 2023, the UCBR reversed the Referee's decision, concluding that Claimant was not ineligible for benefits under Section 402(b) of the Law. Employer appealed to this Court.[6]

Initially, Section 402(b) of the Law provides, in relevant part, that an employee shall be ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). This Court has explained:

> "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." *Warwick v. Unemployment Comp[.] B[d.] of Rev[.]*, 700 A.2d 594, 596 (Pa. Cmwlth. 1997). "A claimant who voluntarily terminates h[er] employment has the burden of proving that a necessitous and compelling cause existed." *Solar Innovations, Inc. v. Unemployment Comp[.] B[d.] of Rev[.]*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012). More specifically,
>
>> [a] claimant who voluntarily quits [her] employment bears the burden of proving that necessitous and compelling reasons motivated that decision. In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary

---

[6] This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the agency's practices or procedures were violated, or whether the findings of fact were supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4

> common sense, and (4) the claimant made a reasonable effort to preserve her employment.
>
> *Middletown T[wp.] v. Unemployment Comp[.] B[d.] of Rev[.]*, 40 A.3d 217, 227-28 (Pa. Cmwlth. 2012) (citations omitted).

*Scheib v. Unemployment Comp. Bd. of Rev.*, 329 A.3d 827, 831 (Pa. Cmwlth. 2025).

Employer argues that the UCBR erred by concluding that Claimant had a necessitous and compelling reason to leave her employment because the isolated incident at the Board meeting was not sufficient to create a hostile work environment.[7] However, "there is a certain level of conduct that an employee will not be required to tolerate and [] the Court will not place all responsibility upon an employee to resolve his or her work dilemma." *Comitalo v. Unemployment Comp. Bd. of Rev.*, 737 A.2d 342, 345 (Pa. Cmwlth. 1999).

"[This] Court has recognized that 'abusive conduct' may constitute a necessitous and compelling reason to voluntarily quit." *Spectrum Cmty. Servs., Inc. v. Unemployment Comp. Bd. of Rev.* (Pa Cmwlth. No. 679 C.D. 2020, filed May 24, 2021),[8] slip op. at 9 (quoting *First Fed. Sav. Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008)). "This includes being called names or being 'subject to criticism and ridicule from [a superior] that was uncalled for and incorrect.'" *Spectrum Cmty.*, slip op. at 10 (quoting *First Fed.*, 957 A.2d at 817). "Even 'a single accusation, if the circumstances surrounding the incident warrant,

---

[7] Employer further argues that Claimant never notified Employer that a road crew worker was slamming doors to harass her, or that she had a medical condition which contributed to her voluntary termination. However, the UCBR found that Chairman Unholtz created the hostile environment that gave Claimant a necessitous and compelling reason to quit, not the road crew worker's harassment or her medical condition.

[8] This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Spectrum Community* is cited for its persuasive value.

may produce sufficient pressure to terminate employment that would compel a reasonable person to act.'" *Id*. (quoting *Sol Neft Sports v. Unemployment Comp. Bd. of Rev.*, 610 A.2d 539, 541 (Pa. Cmwlth. 1992) (emphasis omitted)).[9]

---

[9] The Dissent distinguishes *Sol* on the basis that, unlike the instant matter, *Sol* involved multiple incidents. Notwithstanding, the *Sol* Court explicitly stated:

> **This Court has never established a specific number of accusations** which are legally sufficient to constitute compelling reasons for one to voluntarily terminate one's employment. . . . [W]e think **a single accusation**, **if the circumstances surrounding the incident warrant**, *may* **produce sufficient pressure to terminate employment that would compel a reasonable person to act**. In *Arufo v. Unemployment Compensation Board of Review*, . . . 391 A.2d 43 ([Pa. Cmwlth.]1978), the claimant, a bookkeeper/office manager, was accused of theft by a principal of the company after an independent audit had cleared her of any wrongdoing. We said
>
> > Such an accusation constituted **a very real**, **substantial**, **and serious personal affront to claimant's character and integrity**. . . . **The forecast of continuing accusations and suspicions and absence of confidence and trust required in this type of business relationship created an untenable situation**.
>
> *Id.*, . . . 391 A.2d at 45.

*Sol*, 610 A.2d at 540-41 (citation omitted; bold emphasis added). Here, "[t]he forecast of [Chairman Unholtz's] continuing accusations and suspicions and absence of confidence and trust required in this type of business relationship created an untenable situation [for Claimant]." *Id*.

The Dissent also cites to and distinguishes *Arufo* on the basis that therein, the employer accused the claimant of a *crime*. Notably, the *Arufo* Court did not **limit** its holding to employer's accusations of a crime. Rather, the *Arufo* Court reasoned:

> In this case, [the] claimant was entrusted with important duties and responsibilities relating to her employer's business affairs. In this position, she was accused of theft by one of her employer's principals. Such an accusation constituted **a very real**, **substantial**, **and serious personal affront to [the] claimant's character and integrity**. This was especially so after an independent audit had cleared [the] claimant of any wrongdoing. There was nothing more that [the] claimant could do to overcome the suspicions and restore the confidence in her work. **The forecast of continuing**

6

Here, rather than privately reprimand Claimant for issuing the Memo, Chairman Unholtz chose a Board meeting to publicly yell at, berate, and belittle her. When Claimant's husband attempted to defend her, Chairman Unholtz maligned him, then turned his attention back to Claimant to further disparage her. Even after Claimant and her husband resigned, Chairman Unholtz continued yelling at both of them while they packed up their belongings and left the meeting. Given the public humiliation, out-of-control abusive conduct by the highest ranking Supervisor and the fact that Claimant's co-worker was already harassing her because of the Memo (to the point of aggravating Claimant's Crohn's disease, which required her to change her work schedule to work four ten-hour days instead of five eight-hour days), Claimant felt she had no other choice but to quit.[10]

---

**accusations and suspicions and absence of confidence and trust required in this type of business relationship created an untenable situation**. Under these circumstances, [the] claimant, acting as a reasonable person, was effectively compelled to leave.

*Arufo* 391 A.2d at 45 (emphasis added). In the instant matter, Chairman Unholtz's public tirade attacking Claimant's competence, motives and likeability (even absent the accusation of a crime) "constituted a very real, substantial and serious personal affront to [C]laimant's character and integrity[,]" and "[t]he forecast of continuing accusations and suspicions and absence of confidence and trust required in this type of business relationship created an untenable situation [for Claimant]." *Id*.

[10] The Dissent contends that Claimant did not prove a necessitous and compelling reason because no one from the public was present when the disparaging remarks were made. However, the remarks were made at a **public Board meeting** at which Supervisors Stiles and Rudnik were present. Thus, there was nothing private about the disparagement. Further, Claimant testified that the meeting was recorded, and the recording would be available to anyone upon request. *See* R.R. at 74a. Accordingly, despite the public's absence at the hearing, Claimant was nonetheless exposed to public humiliation.

The Dissent's contention that Claimant should have attempted to preserve her employment by informing Chairman Unholtz that his behavior was unacceptable is unrealistic given the circumstances of his tirade. In addition, Chairman Unholtz was clearly aware that his behavior was inappropriate because he apologized to Rudnik the next day, notwithstanding that his verbal attack on Claimant was far worse than his comments to Rudnik and yet Chairman Unholtz offered no such apology to Claimant.

7

Chairman Unholtz's public attack on Claimant and statements about Claimant "produced [a] real and substantial pressure to terminate employment[,]" which "would compel a reasonable person to [do] the same . . . ." *Scheib*, 329 A.3d at 831 (quoting *Middletown Twp.*, 40 A.3d at 228). This Court cannot conclude Claimant did not act "with ordinary common sense" when she quit after Chairman Unholtz publicly humiliated her (and her husband). *Id.*

The UCBR explained, in relevant part:

> [C]laimant did not quit because of the reprimand. **She quit because she was disrespected by [Chairman Unholtz]**.
>
> . . . .
>
> Ultimately, [Chairman Unholtz] asked [Rudnik] to reconsider quitting and apologized for his conduct during the meeting. **He did not extend the same apology to [C]laimant**. The [UCBR] concludes that [C]**laimant was subjected to a hostile working environment that would have aggravated her health condition**. [**Chairman Unholtz**] **was the highest authority of the Board**, **and there was no one else [C]laimant could complain to about his inappropriate behavior during the meeting**. [**Chairman Unholtz**] **was aware his conduct was inappropriate**, hence his apology to [Rudnik]. [Chairman Unholtz] was the harasser of [C]laimant. **He made an intolerable working environment for [C]laimant**. She [**had**] **no other choice than to quit**.

R.R. at 129a (emphasis added). This Court discerns no error in the UCBR's conclusion. Accordingly, the UCBR properly reversed the Referee's decision.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Wheatfield Township,       :
            Petitioner      :
                        :
          v.           :
                        :
Unemployment Compensation   :
Board of Review,          :   No. 35 C.D. 2024
            Respondent   :

## O R D E R

AND NOW, this 22nd day of August, 2025, the Unemployment Compensation Board of Review's December 20, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Wheatfield Township,        :
           Petitioner    :
                       :
        v.              :
                       :
Unemployment Compensation  :
Board of Review,          :  No. 35 C.D. 2024
           Respondent  :  Submitted: June 3, 2025

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

DISSENTING OPINION BY
JUDGE DUMAS                       FILED: August 22, 2025

I respectfully dissent. I do not condone the Board of Supervisors Chairman Kenneth Unholtz's (Chairman) appalling conduct but must disagree that Colleen Rudnik (Claimant) proved entitlement to benefits.

Section 402(b) of the Unemployment Compensation Law provides that if the claimant's unemployment is "due to voluntarily leaving work without cause of a necessitous and compelling nature," then the claimant is ineligible for benefits. 43 P.S. § 802(b).[1] Whether a claimant had a "necessitous and compelling reason to quit" is ultimately a question of law. *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 832 (Pa. 1977).[2] A claimant must "prove she acted with ordinary

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] "Whether one had cause of a necessitous and compelling nature is an ultimate conclusion which must be drawn from the underlying findings of fact. Such ultimate conclusions sometimes called ultimate facts are legal conclusions and are always subject to appellate review." *Taylor*, 378 A.2d at 832 (citation modified). Thus, we need not defer to the Board on this issue. *See id.*

common sense in quitting and made a reasonable effort to preserve the employment relationship." *Craighead-Jenkins v. Unemployment Comp. Bd. of Rev.*, 796 A.2d 1031, 1033 (Pa. Cmwlth. 2002) (citation omitted).

We have stated that "a single accusation, if the circumstances surrounding the incident warrant, *may* produce sufficient pressure to terminate employment that would compel a reasonable person to" quit. *Sol Neft Sports v. Unemployment Comp. Bd. of Rev.*, 610 A.2d 539, 541 (Pa. Cmwlth. 1992) (*Sol*) (emphasis in original) (discussing *Arufo v. Unemployment Comp. Bd. of Rev.*, 391 A.2d 43, 45 (Pa. Cmwlth. 1978)). *Arufo* involved whether an employer's single accusation of theft—a crime—was a necessitous and compelling reason for the claimant to quit. *Arufo*, 391 A.2d at 45.

In contrast, *Sol*—although citing *Arufo*—addressed multiple acts of employer misconduct. *See Sol*, 610 A.2d at 541; *First Fed. Sav. Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008) (same); *see also Spectrum Cmty. Servs., Inc. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 679 C.D. 2020, filed May 24, 2021), 2021 WL 2068918, at *6 (*Spectrum*) (opining that regardless of whether it was multiple incidents over a year or the "final straw" email accusing the claimant of being a liar, the claimant justifiably quit). Finally, a claimant alerting her employer as to her discontent is a reasonable effort to preserve the employment relationship. *Stiffler v. Unemployment Comp. Bd. of Rev.*, 438 A.2d 1058, 1060 (Pa. Cmwlth. 1982).

Here, in my view, Claimant did not prove a necessitous and compelling reason to quit for two reasons. First, I recognize the Chairman verbally disparaged Claimant and challenged her competence at an open meeting, but no one from the public was present. Notes of Testimony (N.T.), 12/19/22, at 8. Unlike *Arufo*, the Chairman did not accuse Claimant of a crime, and unlike *Sol* and related cases, multiple incidents are not at issue. *Cf. Arufo*, 391 A.2d at 45; *Spectrum*, 2021 WL

2068918, at *6 (suggesting an email impugning the claimant's honesty may be good cause to quit).

Second, nothing of record substantiates the Board of Review's holding that the Chairman was the highest authority of the Board of Supervisors. *See generally* N.T. Even if true, in my view, Claimant, before quitting, should have notified the Chairman that his behavior was unacceptable, which would have been a reasonable effort to preserve her job. *See Stiffler*, 438 A.2d at 1060; *cf. Spectrum*, 2021 WL 2068918, at *7 (concluding it would have been futile for the claimant to complain as the CEO was the culprit).[3] For these two reasons, I cannot hold, as a matter of law, that this singular incident not involving an accusation of a crime or dishonesty would have sufficiently pressured a reasonable person to quit—unlike other cases involving multiple incidents. *See Craighead-Jenkins*, 796 A.2d at 1033; *Sol*, 610 A.2d at 541.

I respectfully dissent.

_____
**LORI A. DUMAS, Judge**

---

[3] Ordinarily, the board of directors checks the CEO, but the issue was not briefed. *See* N.T., 3/3/20, at 7 (discussing the board), *Spectrum*; *see generally* Appellant's Br., 10/5/20, *Spectrum*.