# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy L. Koenig,                                        :
                                                      :
        Petitioner          :
                                                      :
      v.                      : No. 451 C.D. 2016
                                                      : Submitted: August 19, 2016
Unemployment Compensation                             :
Board of Review,                                      :
                                                      :
        Respondent          :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                **FILED:  November 10, 2016**

        Amy L. Koenig (Claimant) petitions for review of the March 4, 2016 order of the Unemployment Compensation Board of Review (Board) concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because she violated the policy of Maxim Health Care Services (Employer) and her conduct in doing so amounted to willful misconduct under the Law.  We affirm.

        Claimant, a registered nurse, worked for Employer as a full-time clinical case manager for approximately three years.  (Record Item (R. Item) 11,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work.  43 P.S. § 802(e).

Referee's Decision/Order, Findings of Fact (F.F.) ¶ 1.) Following her discharge from employment, Claimant filed an initial internet claim for unemployment compensation on October 19, 2015. (R. Item 1, Claim Record; R. Item 2, Internet Initial Claims.) In the separation information submitted to the Department of Labor and Industry (Department), Employer listed as the final incident that caused Claimant's discharge the following:

> During investigation, it was substantiated that [Claimant] falsified clinical information to complete patient plans of care and clinical assessments. [Claimant] also removed patient medical documents from the agency office and kept them at her home for extended periods of time. [Claimant] was interviewed on 10/9/2015 by agency Compliance Representative and admitted to above allegations. She stated she intended to complete the documentation utilizing her memory from her visits. She stated she did not have time to complete the documentation during her normal work day. The documents in question date back to February 2015.

(R. Item 3, Employer Separation Information.) The Department issued a Notice of Determination finding Claimant was ineligible for unemployment compensation. (R. Item 5, Notice of Determination.) Claimant petitioned for review of the Department's Notice of Determination and a hearing was held before the Referee on December 11, 2015. (R. Item 10, Hearing Transcript (H.T.).)

At the hearing, Employer's Tax Consultant Representative appeared as an observer, and Employer presented the testimony of two witnesses: Kristy Champ, Employer's Administrative Officer and Carissa Phillips, Employer's Director of Clinical Services. Claimant, represented by counsel, testified on her own behalf. Following the hearing, the Referee issued a decision and order

2

affirming the Notice of Determination; Claimant then appealed the Referee's decision to the Board.

On March 4, 2016, the Board issued a decision and order affirming the Referee's conclusion that Claimant was ineligible to receive unemployment compensation under the Law because she was discharged from her employment due to willful misconduct. (R. Item 15, Board Decision and Order.) Claimant then petitioned this Court for review of the Board's decision and order.[2]

In its decision, the Board found that Employer had a policy, in conformity with state law and of which Claimant was aware, that governed patient records and established procedures for making entries in patient records, and that such entries were required to be accurate. (R. Item 15, F.F. ¶¶ 2-5.) The Board further found that when assessing a patient during a home visit, Claimant was required to complete documentation that recorded the patient's vital signs and other important clinical information; upon return to Employer's facility, Claimant was then required to use that supporting documentation to create a 'plan of care' document, which outlined the care to be provided to the patient for the next 60 days. (*Id*., F.F. ¶¶ 7-8.) The Board determined that while Claimant was out of

---

[2] This Court's scope of review is limited to determining whether findings of facts are supported by substantial evidence, whether errors of law were committed, and whether constitutional rights were violated. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 n.3 (Pa. 1996). Substantial evidence is defined as "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where the Board's findings of fact are supported by substantial evidence, the findings are conclusive on appeal. *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054, 1059 (Pa. Cmwlth. 2004). When reviewing the record for substantial evidence, this Court must examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977).

work on medical leave for several weeks beginning in early September 2015, Employer had performed an audit of patient care records, which resulted in the discovery that supporting documentation was missing from the records of patients under Claimant's care dating back six months. (*Id.*, F.F. ¶¶ 9-10.) Upon Claimant's return to work, the Administrative Officer found a large number of supporting documents that had been missing from Employer's patient files in Claimant's bag on the floor of her office; these documents had not been completed at the time Claimant made the patient home visits; the Administrative Officer testified that the documents found in Claimant's bag were still incomplete. (*Id.*, F.F. ¶¶ 11-12; R. Item 10, H.T. at 5.) The Board found that Claimant later admitted to the Administrative Officer that the supporting documentation had not been completed during the home visits as required because she did not have time to do so, and Claimant told the Administrative Officer that her practice was to complete the plan of care documents when she returned to her office based in part upon her memory. (*Id.*, F.F. ¶¶ 14-15.) The Board found that Employer considered Claimant's conduct to constitute a falsification of patient records and therefore discharged her from her employment. (*Id.*, F.F. ¶ 18.)

` In its decision, the Board concluded that based upon its factual findings, which were found to be supported by Employer's witnesses' credible testimony, Claimant's actions rose to the level of willful misconduct. Citing Claimant's admission to the Administrative Officer that she routinely completed the plan of care documents when she returned to her office based in part upon her memory of what she had observed during the home visits, the Board agreed with Employer that since Claimant was required to record the observations upon which the plans of care were based during the home visit, the practice of completing these

4

documents from memory constituted a form of falsification, in violation of Employer's policy. (R. Item 15, Board Decision and Order, Discussion.)

Before this Court, Claimant contends that the Board lacked substantial evidence to support a finding that she falsified any document, stating that Employer's witness testified only that Claimant's supporting documents were incomplete, and Employer failed to present any evidence that any plan of care Claimant prepared contained false or even incorrect information. Acknowledging that she may not have followed Employer's polices for timely completion of documents, Claimant asserts that her employment was expressly terminated for falsifying records, and Employer failed to meet its burden of proof that she did so. We disagree.

The question of whether an employee's actions constitute "willful misconduct" is a question of law subject to this Court's review. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996). Willful misconduct is defined as: (i) wanton or willful disregard for an employer's interests; (ii) deliberate violation of an employer's rules; (iii) disregard for standards of behavior which an employer can rightfully expect of an employee; or (iv) negligence indicating an intentional disregard of the employers interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997). It is the employer's burden to demonstrate that an employee has engaged in willful misconduct; however, even if an employer has met its burden, an employee can prove that the actions were justifiable and reasonable under the circumstances such that the employee had good cause and the actions will not be considered willful misconduct. *Rossi*, 676 A.2d at 197.

5

At the referee hearing, Claimant's counsel questioned Employer's Administrative Officer as to whether she had determined that there was any false information in the documents found in Claimant's bag; she responded that, "[w]e had nothing to compare it to. The plans of care that [Claimant] created from those were created from documentation that didn't exist so therefore they were false." (R. Item 10, Referee Hearing Transcript (H.T.) at 10.) The Administrative Officer testified that federal regulations require that supporting documentation be completed in real time while assessing a patient; she explained that Claimant was required to document vital signs and other important clinical information for use upon return to the office, in order to create a plan of care that would then be communicated to a physician for signature. (*Id*., H.T. at 5-6.) The Administrative Officer stated that when Claimant was confronted regarding the alleged infractions, Claimant told her that she had visual memory and had hoped to remember and document the information in support of the plan of care documents at a later time. (*Id*., H.T. at 7.) The Administrative Officer was responsible to complete a 'Compliance Recommendation Form' setting forth Claimant's specific policy violation, which is listed on the form as 'Falsified Clinical Information;' also on the form, Employer's rationale for the determination that the stated policy violation had been substantiated is set forth, indicating that Claimant stated that she would often complete the plans of care based on "scrap notes and memory;" the section of the form entitled "rationale for outcome" further states that "[t]he scrap paper she completed does not contain enough information to draft a comprehensive assessment or plan of care, and it is not feasible for her to use her memory for such specific information." (R. Item 3, Employer Separation Information, Compliance Recommendation Form.) The stated rationale for outcome concludes, "[t]his, in

6

addition to egregious policy violations, will lead to termination…." (*Id.*) At the hearing before the Referee, the Administrative Officer testified that Employer's policy prohibits staff from taking supporting documents or any other part of a patient's medical record home, and stated, "[t]here were egregious policy – other policy violations that occurred," but "[t]he determination [to terminate Claimant's employment] was based on the documentation…being that it was the most severe." (*Id.*, H.T. at 8.)

At the hearing, Claimant testified that she did not fill out any forms from memory, and she conceded that completing a plan of care document by memory rather than by documented observations would not be proper. (*Id.*, H.T. at 13.) Before the Referee, she stated that on home visits, she printed out and carried with her the patient's previous plan of care and would note any changes in the patient's profile on the previous plan of care; she testified that after she completed a new plan of care, she would shred the old one. (*Id.*) There is no indication in the record that Claimant offered this explanation during her October 9, 2015 interview, which was conducted by Employer as part of its investigation. In any event, the Board found credible the Administrative Officer's testimony that Claimant admitted to routinely completing the plan of care document based in part upon her memory of what she observed during the home visits. It is axiomatic that the Board is the ultimate finder of fact, empowered to make credibility determinations and resolve conflicts in the evidence, as well as to determine the weight afforded the evidence; this Court is bound by the Board's evidentiary determinations and is prohibited from substituting its findings for those of the Board under the guise of reviewing the record to determine whether substantial evidence supports the Board's findings. *Peak v. Unemployment Compensation Board of Review,* 501

A.2d 1383, 1385, 1388 (Pa. 1985); *On Line Inc. v. Unemployment Compensation Board of Review,* 941 A.2d 786, 789 n.7 (Pa. Cmwlth. 2008).

We find no error here, where the Board determined that since Claimant was required to record her specific observations as to a patient's vital signs and other clinical information during home visits, and to use that record to create a plan of care document, her conduct in completing plan of care documents and supporting documents based in part upon her memory was properly considered to be a form of falsification of patient records, and therefore violated Employer's policy.

Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Amy L. Koenig, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 451 C.D. 2016 |
| | : |
| Unemployment Compensation | : |
| Board of Review, | : |
| | : |
| Respondent | : |

# O R D E R

AND NOW this 10th day of November, 2016, the order of the Unemployment Compensation Board of Review in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**